## MATTER OF BAEZ-AYALA

### In Adjustment of Status Proceedings

### A-13370256

*Decided by Regional Commissioner September 12, 1968*

(1) To be eligible for the benefits of section 2 of the Act of November 2, 1966, an applicant therefor must also come within the purview of section 1 of that Act [*Matter of Benguria y Rodriguez*, 12 I. & N. Dec. 143, reaffirmed]; hence, the 2-year physical presence requirement of section 1 applies equally to section 2 of that Act. An applicant under section 2 may complete the 2 years physical presence in the United States subsequent to his lawful admission for permanent residence.

(2) Only physical presence completed subsequent to commencement of "residence" as that term is defined in section 101(a)(33), Immigration and Nationality Act, satisfies the physical presence requirement of sections 1 and 2 of the Act of November 2, 1966.

(3) While "residence" may be established after admission in a temporary status, where applicant, following entry in December 1960 as a temporary visitor, departed and remained outside the United States for over 4 years, again making 2 short visits to the United States in 1965, he did not establish a "residence" in this country prior to December 21, 1965, the date he was admitted as an immigrant, for the purposes of satisfying the applicable physical presence requirement in order to establish eligibility for the benefits of section 2 of the Act of November 2, 1966.

ON BEHALF OF APPLICANT: Patterson, Belknap & Webb
One Wall Street
New York, New York 10005

This case comes forward by certification from the District Director, Miami, Florida, who first rejected the application on the ground that the applicant did not have the required two years physical presence in the United States *prior to his admission for permanent residence*. (Emphasis supplied.) The District Director reconsidered that decision and concluded that an applicant for the benefits of section 2 of the Act of November 2, 1966 may complete the two years physical presence in the United States subsequent to his arrival as a permanent resident. He found, however, that the applicant did not reside in the United States prior to his ad-

mission (for permanent residence) on December 21, 1965 and does not have the actual two years physical presence in the United States. The application was denied on that basis and certified for review.

The applicant is a native and citizen of Cuba, born in Havana on August 16, 1917. He was inspected and admitted to the United States as a nonimmigrant visitor on December 11, 1960 and departed from the country in March 1961. He again visited in the United States from April 27, 1965 to June 21, 1965 and from September 11, 1965 to September 20, 1965. He obtained an immigrant visa at the American Embassy, Managua, Nicaragua on September 23, 1965 and was lawfully admitted into the United States for permanent residence on December 21, 1965. In his application for the immigrant visa, executed on September 8, 1965, he indicated that he resided in Havana, Cuba until December 1960; in Panama, Republic of Panama from March 1961 to February 1963 and in Santo Domingo, Dominican Republic from February 1963 to April 1965. He stated in the same application that he had been in the United States as a tourist in 1951, 1960-61, and 1965. After admission for permanent residence, the applicant obtained a reentry permit on August 4, 1966 valid for one year and an extension for that permit valid to August 3, 1968. A request dated January 10, 1968 for the applicant to appear at our Miami office was returned with a note from his son that the applicant was no longer in the United States since his work in Panama made it impossible for him to reside continually in the United States. He did appear at the Miami office on March 29, 1968. The record is otherwise silent concerning the physical presence of the applicant in the United States subsequent to his admission for permanent residence. Counsel states in his brief dated August 2, 1968 "Thus far the applicant has been physically present in the United States for a total of approximately seventeen months."

The pertinent sections of the Act of November 2, 1966 provide as follows:

That, notwithstanding the provisions of section 245(c) of the Immigration and Nationality Act, the status of any alien who is a native or citizen of Cuba and who has been inspected and admitted or paroled into the United States subsequent to January 1, 1959 and has been physically present in the United States for at least two years, may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if the alien makes an application for such adjustment, and the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence. Upon approval of such an application for adjustment of status, the

80

Attorney General shall create a record of the alien's admission for permanent residence as of a date thirty months prior to the filing of such an application or the date of his last arrival into the United States, whichever date is later. The provisions of this Act shall be applicable to the spouse and child of any alien described in this subsection, regardless of their citizenship and place of birth, who are residing with such alien in the United States.

Sec. 2. In the case of any alien described in section 1 of this Act who, prior to the effective date thereof, has been lawfully admitted into the United States for permanent residence, the Attorney General shall, upon application, record his admission for permanent residence as of the date the alien originally arrived in the United States as a nonimmigrant or as a parolee, or a date thirty months prior to the date of enactment of this Act, whichever date is later.

Counsel contends that the phrase in section 2 of the Act *** "any alien described in section 1 of this Act" refers only to that part of section 1 which describes "any alien who is a native or citizen of Cuba and who has been inspected and admitted or paroled into the United States subsequent to January 1, 1959." He submits that the next phrase of section 1 "and has been physically present in the United States for at least two years," is not a part of the description of eligible aliens but is only a condition precedent to adjustment of status under section 1. The legislative history of the Act lends some weight to this view since the legislators appear to have discussed the physical presence requirement only in connection with adjustment of status under section 1.

The genesis of this law, however, indicates that the bill initially passed by the House contained no physical presence requirements but likewise, no retroactive provisions. The record of admission was to be created as of the date the application was granted. The Senate added the requirement for two years physical presence and provisions for creating the record of admission for permanent residence as of the alien's last arrival. This was changed in conference to, in effect, limit the retroactive provisions of section 1 to not more than 30 months.

Congress recognized that many Cubans, after being in the United States for sometime as refugees, determined to make their status permanent and proceed toward United States citizenship through naturalization. As a first step, they expended the time, effort, and money to go abroad to get an immigrant visa and return to their homes in the United States with a lawful admission for permanent residence. The retroactive provisions of section 1 of the Act alone would have had the awkward effect of placing many of these aliens in a less favorable position than had they not obtained lawful admission for permanent residence. Congress

81

sought to correct this inequity by giving this class of Cuban refugees an opportunity for the same retroactive benefits under section 2 as they could have obtained under section 1 had they not acquired lawful admission for permanent residence prior to the effective date of the Act.

We therefore reaffirm our decision in the *Matter of Benguria y Rodriguez,* 12 I. & N. Dec. 143, that an applicant cannot be eligible for the benefits of section 2 if he does not first come within the purview of section 1 of the Act. We find that the intent of Congress was to place aliens under section 2 on a par with those under section 1 and that the physical presence requirements of section 1 apply equally to section 2. In furtherance of this concept of parity, we affirm the District Director's finding that an applicant under section 2 of the Act may complete the two years physical presence in the United States subsequent to his lawful admission for permanent residence.

The clear intent of Congress in providing the retroactive features of both section 1 and section 2 of the Act of November 2, 1966 was to provide some credit for residence toward naturalization to those Cuban aliens who had established themselves and actually resided in the United States for some time as refugees and had not abandoned their residence here. We must distinguish between visits to the United States and residence. There is no indication that Congress intended to provide credit toward naturalization for brief visits to the United States nor for other periods of time when the alien was neither in fact nor in law an actual resident of the United States.

In establishing the effective date of the alien's record of admission for permanent residence, section 1 provides "***a date thirty months prior to the filing of such application or the date of his *last arrival* into the United States, whichever date is later." Section 2 provides "***the date the alien *originally arrived* in the United States as a nonimmigrant or as a parolee, or a date thirty months prior to the date of enactment of this Act, whichever date is later." (Emphasis supplied.)

It was found in *Matter of Riva,* 12 I. & N. Dec. 56, that the term "last arrival" as used in section 1 and the term "originally arrived" as used in section 2 both refer to the same arrival in point of time, namely the alien's first arrival after January 1, 1959, on which occasion he was inspected and admitted or paroled into the United States. It was further found that a subsequent arrival after a temporary absence from the United States with no intention to abandon residence in the United States does not con-

stitute the "last arrival" within the contemplation of section 1 of the Act.

Our applicant, in effect, asks that we adjust the date of his lawful admission to the United States for permanent residence from his actual date of admission for permanent residence (December 21, 1965) to May 2, 1964 (30 months prior to the date of enactment of the Act) on the basis of his entry as a visitor on December 11, 1960. If we could consider that he had resided in the United States continuously since December 11, 1960, we would have no problem. However, the record reflects that after the 1960 entry he remained in the United States as a bona fide visitor for about three months. He then departed and remained outside the country for over four years. He again visited the United States from April 27, 1965 to June 21, 1965 and from September 11 to 20, 1965. He is, therefore, in an entirely different posture from a refugee who, after initial arrival, actually resided in the United States but made brief visits abroad. Our applicant is actually asking that we credit him for time as a permanent resident toward naturalization during which he was not a resident of the United States and had been absent from the country for over four years. This was clearly not the intent of Congress.

As stated previously, we agree with the District Director that the two years of physical presence in the United States may be completed subsequent to admission as a lawful permanent resident. However, only physical presence completed subsequent to commencement of "residence" as that term is defined in section 101(a)(33) of the Immigration and Nationality Act may be recognized. That section states in pertinent part: "The term 'residence' means the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent." Thus, "residence" may be established after admission in a temporary status. However, we find from the circumstances in this case that the applicant did not establish a residence prior to December 21, 1965, on which date he was admitted as an immigrant. In any event the applicant does not have two years of physical presence in the United States. Consequently, he is not eligible to have the record of his admission for permanent residence adjusted under section 2 of the Act of November 2, 1966. The application will be denied.

ORDER: The decision of the District Director, Miami, Florida is affirmed and the application is denied.