Jose JOAQUIN–PORRAS, Petitioner,

v.

Alberto GONZALES,* Attorney General of the United States, Respondent.

Docket No. 03–4202.

United States Court of Appeals, Second Circuit.

Argued: May 12, 2005.

Final Submission: Aug. 24, 2005.

Decided: Jan. 18, 2006.

---

1. The motion for the admission *pro hac vice* of Michael E. Hegarty is GRANTED, *nunc pro tunc* as of September 8, 2005.

* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), we have substituted Attorney General Alberto Gonzales for former Attorney General John Ashcroft as the respondent in this case.

Eric W. Schultz, Robert D. Kolken, Sacks, Kolken & Schultz, Buffalo, NY, for Petitioner.

Allen F. Loucks, Assistant United States Attorney for the District of Maryland, Baltimore, MD (David Kelley, United States Attorney for the Southern District of New York, New York, NY, of counsel), for Respondent.

Before: FEINBERG, CARDAMONE, and SACK, Circuit Judges.

SACK, Circuit Judge.

The petitioner, Jose Joaquin–Porras, entered the United States from Costa Rica in 1991 under a temporary work visa. He resided in this country continuously, except for a few brief excursions to Costa Rica pursuant to "paroles" granted by the Immigration and Naturalization Service ("INS"), until the INS initiated removal proceedings against him in 2000. On January 18, 2001, less than a year after returning from his most recent parole to Costa Rica but almost ten years after the beginning of his otherwise continuous residency in the United States, Porras[1] applied for asylum under 8 U.S.C. § 1158, statutory withholding of removal under 8 U.S.C. § 1231, and withholding of removal under the United Nations Convention Against Torture ("CAT") and its implementing regulations, 8 C.F.R § 208.16(c).

The Immigration and Nationality Act ("INA") requires asylum applications to be filed "within 1 year after the date of the alien's arrival in the United States." INA § 208(a)(2)(B), 8 U.S.C. § 1158(a)(2)(B). According to 8 C.F.R. § 208.4(a)(2)(ii), "The 1–year period shall be calculated from the date of the alien's last arrival in the United States or April 1, 1997, whichever is later." Porras's asylum application was denied by an Immigration Judge ("IJ"), in a decision that was affirmed

without opinion by the Board of Immigration Appeals ("BIA"), on the grounds that his asylum claim was untimely and that Porras had failed to meet his burden of proving his eligibility for asylum, withholding of removal, or CAT relief. We agree with the IJ that Porras's asylum application was untimely, and we agree that Porras has failed to prove that he is eligible for withholding of removal or CAT relief. We therefore deny his petition.

## BACKGROUND

Petitioner Jose Joaquin–Porras is a 38–year–old from Costa Rica who entered the United States on an 18–month J–1 visa in 1991 to work at a bed-and-breakfast inn in Ithaca, New York. In 1993, Porras had his J–1 visa converted to an H–1B visa, allowing him to stay in the U.S. for three years to work at a catering company in Ithaca. In 1996, Porras renewed his visa for an additional three years, thereby extending his legal residency in the U.S. until 1999.

### The Fraudulent Marriage

In 1998, Porras, who is gay, married Kimberly Costanza, a lesbian. She was a friend of his and an American citizen. Porras testified at his hearing before the IJ that the marriage was intended to provide companionship for both parties and to provide a safe home for Costanza, who was being sexually abused by her stepfather. Porras also testified, however, that the two did not cohabit after their marriage.

In June 1999, Porras and Costanza applied for Porras to receive permanent residency, advance parole, and employment authorization based on their marriage. Porras falsely stated on the application that he and Costanza lived together. Having been granted advance parole, Porras

---

1. The petitioner was referred to as Porras, rather than Joaquin–Porras, during the course of his administrative proceedings.

left the country to visit his family in Costa Rica in early January 2000, and returned several weeks later, on January 27, 2000. Approximately two weeks thereafter, Porras and Costanza were interviewed by an INS agent regarding Porras's permanent residency application. Porras either continued to maintain, or did not dissuade the interviewer from thinking, during the interview, that he and Costanza lived together. Immediately following the interview, however, Costanza withdrew the application. Soon thereafter, the INS initiated removal proceedings against Porras, permitting him to remain free during their pendency. At his hearing, Porras admitted to the IJ that he had lied when he told the INS that he lived with Costanza, and he promised, "I would never lie again. I pay a very high price after that. I will never, ever lie again." Hr'g Tr., Oct. 15, 2001, at 37.

### The Asylum Application

On January 18, 2001, Porras applied for asylum, withholding of removal, and relief under the CAT. His claim of persecution rests principally on two incidents, one of which, he testified to the IJ, occurred in 1984 when Porras was 17 years old, and one of which, he further testified, occurred in January 2000 while Porras was visiting Costa Rica during his most recent parole.

Porras testified that one night in 1984, he was walking home from night school at approximately 10 p.m. when he was stopped by a police officer and asked to produce identification. The police officer then forcibly placed Porras in the front seat of his police car, asked him if he "like[d] men," and raped him. *Id.* at 50. The police officer released Porras after warning him never to tell anyone about the incident. Porras did not report the assault to the police.

Porras also testified that on a night in 2000, when he was leaving a gay bar while he was visiting San José, a police officer stopped him and asked him for identification. After Porras produced his New York State driver's license, the police officer ordered Porras into the officer's police car, drove him to the police station, locked him in a cell, and began verbally assaulting him. Porras testified before the IJ, in English, that the police officer yelled various epithets at him, including that Costa Rica is being ruined because "[it's] full of faggots." [2] *Id.* at 68. Porras further testified that the police officer released him after taking all the money in his wallet— approximately forty dollars' worth of local currency—but left Porras with the equivalent of about three dollars to pay the taxicab fare for his return to where he was staying. Again, Porras did not report the incident to law enforcement authorities.

In addition to these two incidents, Porras testified before the IJ that prior to his first entry into the United States, he concealed his sexual orientation because he thought he would not be able to obtain the university job he sought had his sexual orientation been known. Porras explained that he feared ostracism and discrimination should he be returned to Costa Rica, and that he thought that his educational and employment opportunities in that country would be limited because of his sexual orientation. To substantiate these concerns, Porras pointed to several newspaper reports regarding harassment, attacks, and governmental discrimination against homosexuals in that country. Although Porras's asylum application was submitted in January 2001, the most recent article he provided was from December 1998.

**2.** Whether the words actually spoken were in Spanish and Porras's account purported to be a translation of them into English is not apparent from the record.

Porras also provided a copy of the State Department's country conditions report on Costa Rica from the year 2000. The report notes that the country is a "long-standing, stable, constitutional democracy" that "generally respect[s] the human rights of its citizens." U.S. Dep't of State, *Country Report on Human Rights Practices, 2000, Costa Rica* (Feb.2001) *available at* http://www.state. gov/g/drl/rls/hrrpt/2000/wha/746.htm. The report notes, however, that "[t]here were some instances of physical abuse by police and prison guards, and reports of police abuse of authority or misconduct." *Id.* The report suggests that privacy rights are generally respected. *Id.*

Porras also provided a significant amount of information concerning his character and community standing, including multiple character reference letters, copies of his United States income tax returns dating back to 1993, and the deed to his home. The submissions included a letter from the President Emeritus of Cornell University, where Porras was last employed, who described Porras as "an individual of fine and upright character" and "an exemplary member of the Ithaca community." Letter from Frank H.T. Rhodes, President Emeritus, Cornell University, to the Honorable Michael Rocco, Immigration Judge (May 8, 2001). Another university administrator, who had frequent professional contact with Porras, stated, "I truly believe that no one could be more deserving of staying in the United States." Letter from Mary Ahl, Administrative Manager, Society for the Humanities, Cornell University (Apr. 15, 2001). The references as a whole paint a portrait of a hardworking, well-liked, and community-minded person who has excelled professionally.

*The IJ's Decision*

In reviewing Porras's asylum application, the IJ concluded as an initial matter that the application was untimely under section 208(a)(2)(B) of the INA, 8 U.S.C. § 1158(a)(2)(B), which provides that the right to apply for asylum "shall not apply to an alien unless the alien demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States," *id.*, and the related regulation, which states that "[t]he 1–year period shall be calculated from the date of the alien's *last arrival* in the United States or April 1, 1997, whichever is later," 8 C.F.R. § 208.4(a)(2)(ii) (emphasis added).

The IJ acknowledged that Porras "last arrived in the United States on January 27, 2000"—within one year of his January 18, 2001 asylum application—but concluded that Porras "was, in actuality, present in the United States since his first arrival on September 13, 1991 where he remained (with the exception of brief absences of no more than one to three weeks for vacations) under various non-immigrant categories and finally, as a parolee." Oral Decision of the Immigration Judge, dated Oct. 19, 2001 ("Oral Decision"), Tr. at 6. Accordingly, the IJ said, "[t]his continuity of presence ... leads the Court to believe that [Porras's] eligibility for Asylum should be determined not from the date of his last arrival to the United States on January 27, 2000, but from April 1, 1997, the effective date of the regulation in the statute requiring submission of an application for Asylum." *Id.* at 6–7. Thus, the IJ assumed that Porras's return from temporary parole was his "last arrival" in the United States, but nevertheless found the application untimely.

The IJ further determined that Porras did not qualify for a "changed" or "extraordinary" circumstances exception to the one-year deadline provision, 8 U.S.C. § 1158(a)(2)(D). He noted that Porras "is

not an unsophisticated alien. He is educated and either directly or indirectly, was aware of certain Immigration processes which he used not only to change his status, but to extend his non-immigrant stay." Oral Decision at 7. The IJ stated that "[i]nstead of pursuing lawful remedies, [Porras] chose to engage in an elaborate scheme to perpetrate a fraud [on] the Government, the only purpose of which was to remain in the United States, electing this approach over another that might have had less likelihood of success." *Id.* In addition, the IJ determined that Porras's "brief detention and verbal abuse during his last sojourn to Costa Rica without formal charge ... establishes no basis for Asylum or circumstances materially affecting his eligibility therefore." *Id.* at 8.

As an alternative basis for his holding, the IJ concluded that Porras "failed to sustain his burden of demonstrating either that he has suffered persecution in the past, or that he has a well-founded fear of future persecution." *Id.* In reaching this conclusion, the IJ treated Porras's testimony regarding his experiences in Costa Rica as credible, and acknowledged that homosexuality can be a qualifying factor for asylum based on "persecution on account of his membership in a particular social group." *Id.* at 10. The IJ concluded, however, that Porras's sexual assault, while "despicable and abhorrent[,] ... present[ed] a picture of an isolated act of random violence perpetrated by a corrupt police official and ... [was therefore] insufficient to establish eligibility for Asylum." *Id.* The IJ noted that Porras continued to live in Costa Rica without incident for seven years following his rape. He also concluded that Porras's "brief detention, release without harm, and verbal abuse" on his most recent visit to Costa Rica "do not establish persecution within the meaning of the [INA]." *Id.* at 11.

With respect to fear of future persecution, the IJ referred to the State Department report on conditions in Costa Rica and concluded that Porras "failed to demonstrate that there exists in Costa Rica[ ] a pattern of systematic persecution against a group of which [Porras] claims membership and ... that the government of Costa Rica is unable or unwilling to protect him." *Id.* at 12. Accordingly, the IJ denied Porras's application for asylum, withholding of removal, and protection under the CAT. The Board of Immigration Appeals affirmed the IJ's decision without opinion. Porras petitions for our review of those decisions.

## Discussion

Porras argues that the one-year deadline to file for asylum should have been measured from the date of his return to the United States from parole on January 27, 2000, and that the IJ therefore erred in deeming his application untimely. In the alternative, Porras contends that he should have been granted a "changed circumstances" exception to the one-year deadline based on his brief detention in Costa Rica in January of 2000. Porras also challenges the merits of the IJ's decisions denying him asylum, withholding of removal, and CAT relief.

### I.  The One–Year Deadline

#### A.  *Jurisdiction*

█ The INA, by its terms, precludes judicial review of the Attorney General's determinations regarding the one-year deadline provided in 8 U.S.C. § 1158(a)(2). *See* 8 U.S.C. § 1158(a)(3) ("No court shall have jurisdiction to review any determination of the Attorney General under paragraph (2).").  Under the REAL ID Act of 2005, effective May 11, 2005, however, we have jurisdiction to review any "constitu-

tional claims or questions of law" raised in a petition for review, notwithstanding "any other provision of this chapter ... which limits or eliminates judicial review." REAL ID Act of 2005, Pub.L. No. 109–13, Div. B, Title I, § 106(a)(1)(A)(iii), 119 Stat 231, 310 (codified at 8 U.S.C. § 1252(a)(2)(D)). The REAL ID Act applies to this case. *See id.* § 106(b) (Section 106(a) "shall apply to cases in which the final administrative order of removal, deportation, or exclusion was issued before, on, or after the date of the enactment of this division."). As the government concedes, the proper interpretation of the one-year-deadline provision of 8 U.S.C. § 1158(a)(2) is a question of law over which we have jurisdiction under the REAL ID Act. *See Xiao Ji Chen v. U.S. Dep't of Justice,* 434 F.3d 144, 153 (2d Cir. 2006) ("[F]or the purposes of the REAL ID Act, 'a "question of law" is a question regarding the construction of a statute.'" (quoting H.R.Rep. No. 109–72, at 175 (2005)).).

## B. Standard of Review

■ Ordinarily, we review the BIA's interpretations of the INA with the deference described in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), *see also INS v. Aguirre–Aguirre,* 526 U.S. 415, 424, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999) ("It is clear that principles of *Chevron* deference are applicable to th[e INA] statutory scheme."), and similarly afford "substantial deference" to the agency's interpretation of its own regulations, *Ramsameachire v. Ashcroft,* 357 F.3d 169, 178 (2d Cir.2004) (internal quotation marks and citation omitted). When, however, as is the case before us, the BIA summarily affirms a decision of an immigration judge, we do not extend such deference to the IJ's statutory interpretations. *See Shi Liang Lin v. U.S. Dep't of Justice,* 416 F.3d 184, 190–91 (2d Cir.2005).

We have not as yet had occasion to decide whether the summarily-affirmed interpretations of IJs are reviewed de novo, or with the lesser form of deference established under *Skidmore v. Swift & Co.,* 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944). *See Shi Liang Lin,* 416 F.3d at 191; *Ashton v. Gonzales,* 431 F.3d 95, 97 (2d Cir. 2005). Here, we need not so carefully gauge the proper level of deference, if any, to be given to the IJ's decision because we agree with the IJ's conclusion that Porras's asylum application was untimely, albeit on grounds other than those relied upon by the IJ.

## C. "Last Arrival in the United States"

■ As we have noted, section 208(a)(2)(B) of the INA requires asylum applications to be filed "within 1 year after the date of the alien's arrival in the United States," and 8 C.F.R. § 208.4(a)(2)(ii) provides that "[t]he 1–year period shall be calculated from the date of the alien's last arrival in the United States or April 1, 1997, whichever is later." Porras's asylum application was undisputedly filed within one year of his return from his parole to Costa Rica on January 27, 2000, so the timeliness issue turns on whether that date should be considered Porras's "last arrival in the United States" for purposes of section 208(a)(2)(B).

■ Porras contends that the IJ's decision contradicts the plain language of the applicable regulation, 8 C.F.R. § 208.4(a)(2)(ii), to which we must give effect when, as here, it is not "'arbitrary, capricious, or manifestly contrary to the statute.'" *Ahmetovic v. INS,* 62 F.3d 48, 51 (2d Cir.1995) (quoting *Chevron,* 467 U.S. at 844, 104 S.Ct. 2778). As we have discussed, the IJ stated, notwithstanding

the regulation's provision that "[t]he 1–year period shall be calculated from the date of the alien's last arrival in the United States," 8 C.F.R. § 208.4(a)(2)(ii), that Porras's "eligibility for Asylum should be determined *not* from the date of his last arrival to the United States on January 27, 2000," Oral Decision at 6 (emphasis added). In light of the fact that the IJ, even in the course of denying Porras's application as untimely, apparently assumed that January 27, 2000, was the date of Porras's "last arrival" in the United States, Porras's plain-language argument seems plausible.

Upon analysis, however, we conclude that the term "last arrival in the United States" should not be read to include an alien's return to the United States after a brief trip abroad pursuant to a parole explicitly permitted by United States immigration authorities. Although the use of the word "last" seems to imply that there can be more than one "arrival," it is anything but self-evident that the phrase "arrival in the United States" refers to any and all border crossings into the country. Indeed, while counsel has not referred us to a case interpreting the term in the context of the regulation at issue here, and we have discovered no such authority ourselves, in other contexts "last arrival [in] the United States" has been taken to exclude returns from temporary departures from the country. *See* 8 C.F.R. § 245.2(a)(4)(iii) (under the Act of November 2, 1966 providing for the adjustment of status of certain Cuban nationals, "[i]f an applicant ... departs from the United States temporarily with no intention of abandoning his or her residence, and is readmitted or paroled upon return, the temporary absence shall be disregarded for purposes of the applicant's 'last arrival' into the United States"); *Matter of Baez–Ayala*, 13 I. & N. Dec. 79, 82–83, Interim Decision No.1925, (BIA 1968) ("[A] subsequent arrival after a temporary absence from the United States with no intention to abandon residence in the United States does not constitute the 'last arrival' within the contemplation of section 1 of the Act [of November 2, 1966]."); *cf. Lagandaon v. Ashcroft*, 383 F.3d 983, 986 n. 1 (9th Cir.2004) ("The Notice to Appear gives the date of Lagandaon's last arrival in the United States as July 31, 1988. The parties agree, however, and the Board of Immigration Appeals found, that Lagandaon was absent from the United States in 1988 for only twenty days. An absence of that length does not interrupt a period of presence for purposes of cancellation of removal eligibility.").[3] Conversely, we are aware of no authority supporting the notion that a return from a short absence abroad constitutes an "arrival" in the United States for these or similar purposes. Thus, read in the context of other immigration statutes and decisions, the IJ's conclusion when applying the statute was reasonable, despite the fact that he seemed to disregard the words of the applicable regulation.

Moreover, the IJ's conclusion best accords with the purpose of the statute as a whole. The one-year deadline was added to the INA as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009, which, among other things, restricted the circumstances in which asylum could be granted. As is manifest in the IIRIRA and its legislative

---

3. In each of the cases cited here, the exclusion of returns from temporary departures from the definition of "last arrival [in] the United States" resulted in a benefit to the alien. In this case, however, our construction of "last arrival" works a detriment to Porras. This difference does not detract in any way from the conclusion that "last arrival" has not been interpreted to mean a return from a temporary departure.

history, Congress was concerned that "[t]he asylum system has been abused by those who seek to use it as a means of 'backdoor' immigration." H.R.Rep. No. 104–469(I), at 107 (1996); *see also* S.Rep. No. 104–249, at 3 (1996) (stating that a purpose of the bill was to address "the abuse of humanitarian provisions such as asylum"). Congress intended the one-year deadline to prevent persons who had resided in the United States for an extended period of time from applying for asylum as an afterthought, after overstaying their visas or failing to obtain citizenship through another means. *See* H.R.Rep. No. 104–469(I), at 116 (expressing concerns about asylum applications from "visa overstayers," many of whom, in the House Committee's view, filed for asylum "as a means of remaining in the United States indefinitely"); *id.* at 139 (noting with disapproval that, prior to the Act, aliens were "able to file an asylum application regardless of how long they have *resided* in the United States") (emphasis added). Permitting applicants to reset the asylum clock by taking a short excursion abroad would undermine the one-year deadline's clear purpose of focusing the asylum process on those who have recently fled persecution in their home countries.

## II. Exceptions to the One–Year Deadline

■ Porras contends that even if he did miss the one-year deadline to apply for asylum, he is eligible for a "changed circumstances" exception to the deadline because his January 2000 arrest in Costa Rica constituted persecution and increased his fear of future persecution, thus "materially affect[ing his] eligibility for asylum." 8 U.S.C. § 1158(a)(2)(D); *see also* 8 C.F.R. § 208.4(a)(4). Although he does not press the argument on appeal, Porras might also have asserted that he was eligible for an "extraordinary circumstances" exception

because he "maintained ... lawful ... nonimmigrant status ... until a reasonable period before the filing of [his] asylum application." *Id.* § 208.4(a)(5)(iv).

We have no authority to review the IJ's decision as to "changed" or "extraordinary" circumstances unless it implicates "constitutional claims or questions of law" over which the REAL ID Act grants this Court jurisdiction. *See* 8 U.S.C. § 1158(a)(3) (no court has jurisdiction to review the timeliness requirements of § 1158(a)(2)); 8 U.S.C. § 1252(a)(2)(D) (providing judicial review for "constitutional claims or questions of law"). In *Xiao Ji Chen, supra,* we addressed the same issue and concluded that we are "without jurisdiction to review petitioner's claims to the extent that she asserts that the IJ abused his discretion when making factual determinations that she had failed to demonstrate either 'changed' or 'extraordinary' circumstances." 434 F.3d at 154. Here, the IJ looked to "the facts and the circumstances as presented in this case" and concluded that Porras did not qualify for an exception. Oral Decision at 7. We therefore conclude that we cannot disturb the IJ's conclusion that Porras was not entitled to file past the one-year deadline because of changed or extraordinary circumstances. *Cf. Ramadan v. Gonzales,* 427 F.3d 1218, 1221–22 (9th Cir.2005) (noting that "the existence of 'changed circumstances' that materially affect eligibility for asylum is a predominately factual determination, which will invariably turn on the facts of a given case").

## III. Withholding of Removal and CAT

■ The one-year deadline of 8 U.S.C. § 1158(a)(2)(B) does not apply to applications for withholding of removal or CAT relief. *See* 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16(a); *Xiao Ji Chen,* 434 F.3d at 163; *Yahong Zheng v. Gonzales,*

409 F.3d 804, 808 (7th Cir.2005). We therefore review these claims on the merits.

In order to establish eligibility for withholding of removal, a petitioner must "establish[ ] that it is more likely than not that his 'life or freedom would be threatened in [the] country because of [his] race, religion, nationality, membership in a particular social group, or political opinion.'" *Ramsameachire*, 357 F.3d at 178 (quoting 8 U.S.C. § 1231(b)(3)(A) (alterations in *Ramsameachire* )). To qualify for CAT relief, a petitioner must demonstrate that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). Applicable regulations define torture as

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 1208.18(a)(1).

■ We review the IJ's findings of fact with regard to Porras's withholding of removal and CAT claims for "substantial evidence," *Islami v. Gonzales*, 412 F.3d 391, 396 (2d Cir.2005), a standard of review that "is slightly stricter than the clear-error standard that the circuit courts typically apply in reviewing a district court's factual findings," but that does not permit us to "reverse the BIA simply because we disagree with its evaluation of the facts," *Jin Shui Qiu v. Ashcroft*, 329 F.3d 140,

149 (2d Cir.2003) (internal quotation marks and citations omitted). "We review de novo questions of law regarding what evidence will suffice to carry any asylum applicant's burden of proof." *Islami*, 412 F.3d at 396 (internal quotation marks and citations omitted).

As noted, Porras's petition is based on two incidents in which police in Costa Rica mistreated him on account of his sexual orientation. With respect to the first, when he was raped by a police officer, the IJ found that while "[t]here is no question that the sexual assault of [Porras] constitutes a despicable and abhorrent act, ... [Porras's] experience as described and the circumstances of his abuse present a picture of an isolated act of random violence perpetrated by a corrupt police official." Oral Decision at 10. The IJ's finding that the 1984 rape was "an isolated act" is a factual one that is reviewed for, and supported by, substantial evidence. In particular, the undisputed fact that Porras remained in Costa Rica for seven years after the incident without suffering further attacks of any kind substantially supports the IJ's finding that, however despicable, the assault on Porras was an isolated event.

Having found that the rape was an isolated attack by a corrupt official, the IJ reasonably concluded that it did not justify withholding of removal, because it was not "more likely than not that were he ... to be deported[, Porras's] life or freedom would be threatened." *Islami*, 412 F.3d at 395; *cf. Melgar de Torres v. Reno*, 191 F.3d 307, 313 (2d Cir.1999) (noting that petitioner's "rape by Salvadoran soldiers ... does not provide a basis for a well-founded fear of persecution" when there was "no evidence to suggest that the rape was anything but an act of random violence"). The IJ also properly concluded that Porras's 1984 rape and subsequent experiences in Costa Rica did not establish

that it was "more likely than not that [Porras] would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2).

■ Substantial evidence also supports the IJ's finding that Porras's detention in January 2000 was "brief," and that Porras was released "without harm." Oral Decision at 11. Having found these facts, the IJ correctly concluded that they did not establish that Porras's life or freedom would be threatened should he return to Costa Rica. Cf. Ai Feng Yuan v. U.S. Dep't of Justice, 416 F.3d 192, 198 (2d Cir.2005) (declining to grant petition for review of IJ's determination that petitioner had not been persecuted where petitioner "was detained only briefly, and was not mistreated while in custody"). The January 2000 incident therefore does not establish Porras's eligibility for withholding of removal. Because no "severe pain or suffering" was inflicted on Porras, he fails to qualify for CAT relief as a result of the 2000 incident. 8 C.F.R. § 1208.18(a)(1).

■ In a recent decision, we warned that "[t]aking isolated incidents out of context may be misleading" when determining whether asylum applicants are entitled to relief. "The cumulative effect of the applicant's experience must be taken into account." Poradisova v. Gonzales, 420 F.3d 70, 80 (2d Cir.2005) (internal quotation marks omitted). But in this case there is ample basis for the IJ's conclusion that the two incidents described by Porras—disparate in time, place, nature and severity as they are—do not, taken together, satisfy the high standards of proof necessary for withholding of removal or relief under the CAT.

## Conclusion

For the foregoing reasons, Porras's petition for review is denied. His motion for a stay of deportation pending our review of his petition is denied as moot.