**Dauren SHAMSHUALEEV, Olga Olegovna Kalkis, Petitioners,**

v.

**Alberto GONZALES, Respondent.**

No. 06–4658–ag.

United States Court of Appeals, Second Circuit.

July 3, 2007.

Peter D. Keisler, Assistant Attorney General, Civil Division; Michelle Gorden Latour, Assistant Director; Brendan P. Hogan, Attorney, Office of Immigration Litigation, Washington, D.C., for Respondent.

PRESENT: Hon. RALPH K. WINTER, Hon. CHESTER J. STRAUB and Hon. RICHARD C. WESLEY, Circuit Judges.

## SUMMARY ORDER

Petitioner Dauren Shamshualeev, a citizen of Russia of Kazakh nationality and Asian race, and petitioner Olga Olegovna Kalkis, a native and citizen of Russia, seek review of a September 11, 2006 order of the BIA affirming the March 16, 2005 decision of Immigration Judge ("IJ") Michaelangelo Rocco denying their application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Dauren Shamshualeev, Olga Olegovna Kalkis,* Nos. A 97 302 794, A 97 302 796 (B.I.A. Sept. 11, 2006), *aff'g* Nos. A 97 302 794, A 97 302 796 (Immig. Ct. Buffalo, Mar. 16, 2005). We assume the parties' familiarity with the underlying facts and procedural history in this case.

When the BIA summarily affirms the decision of the IJ without issuing an opinion, *see* 8 C.F.R. § 1003.1(e)(4), this Court reviews the IJ's decision as the final agency determination. *See, e.g., Twum v. INS,* 411 F.3d 54, 58 (2d Cir.2005). This Court reviews the agency's factual findings under the substantial evidence standard, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see, e.g., Zhou Yun Zhang v. INS,* 386 F.3d 66, 73 & n. 7 (2d Cir.2004). A determination "based on flawed reasoning ... will not satisfy the substantial evidence standard," and the agency's use of "an inappropriately stringent standard when evaluating an appli-

Dauren Shamshualeev, Olga Kalkis, pro se, Key West, FL, for Petitioners.

cant's testimony constitutes *legal*, not factual error." *Secaida–Rosales v. INS*, 331 F.3d 297, 307 (2d Cir.2003); *Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 400 (2d Cir.2005); *see also Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 339–40 (2d Cir.2006) (agreeing with this principle, but avoiding remand, in spite of deficiencies in an adverse credibility determination, because it could be confidently predicted that the IJ would adhere to the decision were the case remanded).

Here, the IJ's determination that Shamshualeev failed to establish past persecution was flawed because the record does not support the IJ's finding that Shamshualeev failed to show that he was singled out and targeted for persecution. To the contrary, Shamshualeev testified that he was physically assaulted on four separate occasions—approximately every other year from the late 1990s to 2003—by groups of either classmates or skinheads who told him to "get out" of "their" country and return to Kazakhstan. He received medical treatment on three of those occasions, and sustained injuries to his head, right kidney, and ribs during the last attack. Additionally, upon reporting these incidents to the principals of his schools and to the police, he testified that the principals alternately told him to change schools and that there was nothing that could be done about the way he was treated because he was "different from everybody else," and that the police "did nothing" when he was beaten in his apartment building.

The incidents described by Shamshualeev were distinguishable from those events that this Court has found to be "isolated" and "random," in that he alleged circumstances indicating that the persecutors were motivated by his race or nationality as a Kazakh, and he recounted several incidents that occurred over a shorter time period. *See Joaquin–Porras v. Gonzales*, 435 F.3d 172, 181 (2d Cir.2006); *Melgar de Torres v. Reno*, 191 F.3d 307, 313 (2d Cir.1999). Further, although the police questioned people regarding the incident in which he was beaten by skinheads while walking in a park with his Russian girlfriend, the IJ failed to sufficiently analyze whether the authorities were unable or unwilling to protect him, in light of the country conditions described in the 2003 State Department Country Report on Human Rights Practices for China.[1]

Moreover, because the IJ found the later two physical attacks described by Shamshualeev to be "random acts" by "thugs," he failed to evaluate the cumulative effect of all of the physical assaults alleged by Shamshualeev. *See Poradisova v. Gonzales*, 420 F.3d 70, 79–80 (2d Cir. 2005). The IJ similarly failed to address the repeated recurrence of swastikas or other anti-ethnic graffiti on Shamshualeev's home, despite his family's transfer to a new residence. While the perpetrators of the various offenses against Shamshua-

---

1. This report states that "members of ethnic or racial minorities were the victims of beatings, extortion, and harassment by skinheads and members of other racist and extremist groups"; police "made few arrests, although many such cases were reported by human rights organizations"; skinhead groups "numbered 50,000 in over 50 organizations at year's end," and "[n]ot all of the authorities appeared willing to acknowledge the racial motivation behind anti-social brutality." *Country Reports on Human Rights Practices–*

*2003, Russia*, U.S. Department of State, Bureau of Democracy, Human Rights, and Labor, at 36 (Feb.2004). The State Department also notes that new federal and local measures to combat crime "continued to be applied disproportionately to persons appearing to be from the Caucasus and Central Asia," and that the police reportedly "beat, harassed, and demanded bribes from persons with dark skin, or who appeared to be from the Caucasus, Central Asia, or Africa." *Id.*

leev and his family members were not identified, we have never imposed a requirement that a victim conclusively identify his persecutors. Such a requirement would be contrary to the holding in *In re S–P–*, 21 I. & N. Dec. 486, 494 (BIA 1996), that circumstantial evidence of nexus may be sufficient. *See Osorio v. INS*, 18 F.3d 1017, 1023–25, 1031 (2d Cir.1994) (finding persecution on account of political opinion where petitioner received two anonymous death threats and several of his fellow union workers were attacked or killed by unidentified armed men).

The IJ's finding that Shamshualeev failed to demonstrate a well-founded fear of persecution is also flawed. First, because the IJ's past persecution analysis was flawed, the question of whether Shamshualeev is entitled to a rebuttable presumption of a well-founded fear remains unanswered. *See* 8 C.F.R. § 208.13(b)(1). Further, in rejecting Shamshualeev's mother's letter recounting the burning of the family car by skinheads after his departure to the United States, the IJ was obliged to point to the relevant documentation that he would have required to support this aspect of his claim, and show that it was reasonably available, when Shamshualeev was otherwise credible. *See Jin Shui Qiu v. Ashcroft*, 329 F.3d 140, 153 (2d Cir.2003).

The above deficiencies in the IJ's decision require remand of Shamshualeev's and his wife's claims for asylum, withholding of removal and CAT relief, all of which share the same factual predicate, because we cannot state with confidence that the IJ would find them ineligible for relief, absent the errors. *See Xiao Ji Chen*, 471 F.3d at 339–40.

For the foregoing reasons, the petition for review is GRANTED, the decision of the BIA is VACATED, and the case REMANDED for further proceedings consistent with this decision. Having completed our review, petitioner's pending motion for a stay of removal in this petition is DENIED as moot.