156

Anton TANUMIHARDJA, Petitioner

v.

ATTORNEY GENERAL OF
the UNITED STATES,
Respondent.

No. 07–1699.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit
LAR 34.1(a) April 10, 2008.

Filed: April 17, 2008.

Laetitia B. Creech, Philadelphia, PA, for
Petitioner.

Mark C. Walters, Richard M. Evans,
Stephen J. Flynn, Brooke M. Maurer,
United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before: SMITH, HARDIMAN and
ROTH, Circuit Judges.

OPINION OF THE COURT

HARDIMAN, Circuit Judge.

Petitioner Anton Tanumihardja seeks
review of an order of the Board of Immigration Appeals (BIA), which dismissed his
appeal of an order of removal by the Immigration Judge (IJ). We will deny the
petition for review.

I.

Tanumihardja was admitted into the
United States at Washington, D.C. as a
non-immigrant visitor. In violation of the
terms of his visa, Tanumihardja took a job
as a waiter in Philadelphia. After he overstayed his visa, Tanumihardja was served
with a notice to appear and conceded removability. He then applied for asylum
and withholding of removal under the Immigration and Naturalization Act (INA), as
well as protection under the Convention
Against Torture (CAT). Tanumihardja
claimed that he would be persecuted if
forced to return to Indonesia because he is
an ethnic Chinese, a Catholic, and a homosexual.

The IJ conducted a hearing on the merits at which Tanumihardja testified. After
stating that he was a 40 year-old ethnic
Chinese whose family had converted to
Catholicism when he was a teenager, Tanumihardja explained that he had lived in a
province in Indonesia that was 90% Muslim. During his childhood, Muslim neighbors harassed Tanumihardja's family because of their ethnicity by pestering them
for money and smearing feces on the door
of their house. In addition, the neighbors
broke one of Tanumihardja's teeth and
slapped his sister. Tanumihardja also
claimed that a bomb exploded in the parking lot of his church on Christmas Eve of
2000; although he was not hurt, Tanumihardja stated that he felt traumatized by
the event, and stayed away from the
church for three months.

Although Tanumihardja failed to note
his sexual orientation in his initial asylum
application, at the hearing he insisted that
he had experienced harassment that
caused him to "stay in the closet" because
of the danger inherent in being openly
homosexual in a Muslim country such as
Indonesia. Tanumihardja also related
three instances of discrimination or
harassment that he had experienced or
witnessed in Indonesia. The first involved
an openly-gay friend at work who was

fired after refusing the employer's demand to hide his sexual orientation. Tanumihardja admitted, however, that he had worked at the company for three years, that no one there knew he was gay, and that the company did not harass or discriminate against him. The second anecdote involved his arrest and interrogation for 12 hours during a raid in an area where "drag queens" loitered. Although Tanumihardja admitted that he was merely questioned and warned not to return to the area, he stated that he saw one officer order a drag queen to perform fellatio on him in front of the other detainees. Finally, Tanumihardja stated that while attending a gay party in a city outside Jakarta in June 2000, he was forced to flee the gathering when he heard an angry mob yelling "burn them, burn them and kill them."

In sum, Tanumihardja stated that he left Indonesia because his ethnicity, religion, and sexual orientation exposed him to persecution; if forced to return, he feared being killed. Tanumihardja admitted, however, that he did not relate any of these alleged episodes of harassment in any of his applications for asylum.

It is also noteworthy that Tanumihardja stated that he had visited Bali, Indonesia on holiday and felt safe there because of the relatively tolerant attitude of the people. Tanumihardja did not consider relocating to Bali because the cost of living there was too high and he had no family or friends there. Tanumihardja conceded, however, that the cost of living in Bali, high as it was, was still lower than the cost of living in Philadelphia, and admitted that he has no relatives in the United States. He added that his first choice was to emigrate to Australia—where he had been schooled and had family and friends—but his older sister had urged him to move to the United States instead.

At the conclusion of the hearing, the IJ denied Tanumihardja's application orally, explaining that the incidents he related failed to establish past persecution, a well-founded fear of future persecution, or a likelihood that he would be tortured upon his return to Indonesia. The BIA adopted the findings of the IJ, affirmed its decision, and dismissed the appeal.

## II.

"Where as here, the BIA adopts the findings and reasoning of the IJ, the IJ's opinion forms the substance of the final order and we must review it accordingly." *Chukwu v. Attorney General*, 484 F.3d 185, 189 (3d Cir.2007) (citation omitted). To the extent that the BIA has adopted the IJ's findings, we review those findings under the substantial evidence standard, upholding them "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Dia v. Ashcroft*, 353 F.3d 228, 249 (3d Cir.2003) (en banc).

Tanumihardja claims that he carried his burden of proving that he is a "refugee," see 8 U.S.C. § 1158(b)(1)(B)(I), by demonstrating a well-founded fear of persecution on the basis of a privileged ground. *See Sun Wen Chen v. Attorney General*, 491 F.3d 100, 105 (3d Cir.2007) (citation omitted). "In order to establish persecution, an applicant must show past or potential harm rising to the level of persecution on account of a statutorily enumerated ground that is committed by the government or by forces the government is unable or unwilling to control." *Valdiviezo–Galdamez v. Attorney General*, 502 F.3d 285, 288 (3d Cir.2007). Race, religion, and sexuality are all privileged grounds. *See* INA § 208(b)(1), 8 U.S.C. 1101(a)(42)(A); *see also Amanfi v. Ashcroft*, 328 F.3d 719, 730 (3d Cir.2003) (concluding that imputed status as homosexual is a cognizable theo-

ry of social group membership). To establish a well-founded fear of future persecution, an applicant must show a subjective fear as well as an objectively reasonable possibility that he would suffer such persecution if he were deported. *See* 8 C.F.R. § 1208.13(b)(2)(I).

Applying the foregoing legal standards to this case, we find that there is substantial evidence to support the IJ's conclusion that Tanumihardja failed to establish past persecution. At its most forceful, Tanumihardja's testimony established only that Indonesians had aggressively panhandled him because he was of Chinese ethnicity, that Muslim neighbors had assaulted him when he was a child, and that someone detonated a bomb in his church parking lot. But there is no evidence that these occurrences—which were either remote in time, caused him no injury, or both—were perpetrated by "forces the government is unable or unwilling to control." *Valdiviezo–Galdamez,* 502 F.3d at 288. Evidence of "mere generalized lawlessness and violence between diverse populations" is not, without more, persecution. *See Zubeda v. Ashcroft,* 333 F.3d 463, 469 (3d Cir.2003).

The same can be said of two of the three anecdotes that Tanumihardja related about his experience as a gay man in Indonesia, *viz.,* his recollection of a friend who was fired because of his sexual orientation, and his description of the angry mob which broke up a party. There is no evidence that these incidents of private discrimination occurred with the knowledge or approval of the Indonesian government. Absent some indication that these acts were committed by forces the government was unable or unwilling to control, neither amounts to persecution. *See Abdulrahman v. Ashcroft,* 330 F.3d 587, 592 (3d Cir.2003); *see also Ahmed v. Ashcroft,* 341 F.3d 214, 217 (3d Cir.2003).

As for the police roundup of men in the company of "drag queens," we agree with the IJ that the police conduct was consistent with the enforcement of Indonesia's laws against prostitution, especially given Tanumihardja's admission that drag queens "were cruising some guys who were interested [in] having sex for fun." Law enforcement is not persecution. *See Ambartsoumian v. Ashcroft,* 388 F.3d 85, 91 (3d Cir.2004) (a Ukranian alien's trouble with police not persecution when based on his failure to follow the law). Although the conduct of the officer who allegedly demanded fellatio of a drag queen is disturbing, there is no evidence in the record that this was part of a "systematic, pervasive, or organized" pattern of official persecution of homosexuals in Indonesia, as opposed to an isolated instance of police misconduct which was not directed at Tanumihardja. Such conduct, while reprehensible, is not persecution. *See Kibinda v. Attorney General,* 477 F.3d 113, 120 (3d Cir.2007). Furthermore, because Tanumihardja was not a "drag queen," there is no reason to believe he would be singled out for such treatment, which is consistent with the fact that he was detained for a few hours and released unharmed. *See, e.g., Joaquin–Porras v. Gonzales,* 435 F.3d 172, 182 (2d Cir.2006) (no persecution on account of his sexual orientation when petitioner detained briefly and released unharmed). Thus, this episode does not rise to the level of persecution. *See Lie v. Ashcroft,* 396 F.3d 530, 537 (3d Cir.2005).

In sum, we agree with the IJ's determination that Tanumihardja failed to establish a well-founded fear of future persecution on account of his race, religion, or sexual orientation. *See Zubeda v. Ashcroft,* 333 F.3d 463, 469 (3d Cir.2003). Although Tanumihardja described general fear and intimidation—mostly on account of his sexuality and, to a lesser extent, his religious beliefs—he pointed to no specific

159

threats which demonstrate that he is at an "individualized" risk for persecution. *See Lie*, 396 F.3d at 537. We also note that Tanumihardja admitted that he felt safe on the Indonesian island of Bali, and the regulations preclude a finding of a "well-founded fear of persecution if the applicant could avoid persecution by relocating to another part of the applicant's country of nationality." 8 C.F.R. § 208.13(b)(2)(ii).

For the foregoing reasons, the petition for review will be denied.