14-4419-cv
Linares-Urrutia v. Sessions

# UNITED STATES COURT OF APPEALS

# FOR THE SECOND CIRCUIT

August Term, 2016

(Argued: January 4, 2017      Decided: March 7, 2017)

Docket No. 14-4419-cv

- - - - - - - - - - - - - - - - - - -x

JOSE LINARES-URRUTIA,

Petitioner

- v.-

JEFFERSON B. SESSIONS, III,
U.S. Attorney General,[*]

Respondent.

- - - - - - - - - - - - - - - - - - -x

Before:                JACOBS, SACK, and CARNEY, Circuit Judges.

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Jefferson B. Sessions, III, is automatically substituted for former Attorney General Loretta E. Lynch as Respondent.

An asylum claim must be filed within one year of the alien's "last arrival" in the United States. 8 C.F.R. § 208.4(a)(2)(ii). Petitioner, who was illegally present in the United States after multiple deportations, crossed into Canada by bridge, was detained four hours by the Canada Border Services Agency, and was then returned back over the bridge. This appeal presents the question whether that return counts as his "last arrival" into the United States, thus giving him an additional one year from that date to file an asylum application. Our prior precedent would foreclose that result. But deference to a subsequent Board of Immigration Appeals ("BIA") opinion raises a doubt that the BIA is better suited to resolve. Accordingly, we grant the petition in part and remand the case to the BIA to determine whether Linares-Urrutia's asylum claim was timely. We dismiss the petition as to the remaining claims.

ROBERT J. MALIONEK (with George C. Chipev on the brief, Washington, D.C.), Latham & Watkins, New York, New York, for Appellant Jose Linares-Urrutia.

M. JOCELYN LOPEZ WRIGHT (with Benjamin C. Mizer, Principal Deputy Assistant Attorney General, and Melissa Neiman-Kelting, Senior Litigation Counsel, Office of Immigration Litigation, on the brief), for Appellee Jeff Sessions.

DENNIS JACOBS, <u>Circuit Judge</u>:

Petitioner Jose Linares-Urrutia seeks review of a November 13, 2014 decision by the Board of Immigration Appeals ("BIA") dismissing his appeal from the denial of applications for asylum, withholding of removal, and relief under the Convention Against Torture. An asylum claim must be filed within one year of the alien's "last arrival" in the United States. 8 C.F.R. § 208.4(a)(2)(ii). Petitioner, who was illegally present in the United States after multiple deportations, crossed into Canada by bridge, was detained four hours by the Canada Border Services Agency, and was then returned back over the bridge.

This appeal presents the question whether that return counts as his "last arrival" into the United States, thus giving him an additional one year from that date to file an asylum application. This Court's prior precedent would foreclose that result. But deference to a subsequent BIA opinion raises a doubt that the BIA is better suited to resolve. Accordingly, we grant the petition in part and remand the case to the BIA to determine whether Linares-Urrutia's asylum claim was timely. We dismiss the petition as to the remaining claims.

## I

Linares-Urrutia is a native and citizen of El Salvador who has lived off-and-on in the United States for nearly 30 years. He first entered in approximately 1988, and was deported that same year. He illegally reentered shortly thereafter. In 1995, he was apprehended while again illegally reentering, this time from Canada, and was granted delayed voluntary departure. In 2011, the Department of Homeland Security reinstated his 1988 removal order and removed him back to El Salvador. Linares-Urrutia was convicted of four criminal offenses between his initial entry in 1988 and his 2011 removal: larceny and unlawful entry in Virginia in 1994, criminal mischief with intent to damage property in New York in 2004, and seventh-degree criminal possession of cocaine in New York in 2007.

Linares-Urrutia yet again reentered illegally shortly after his 2011 removal. Then, on April 25, 2012, he walked across the Peace Bridge from New York into Canada, apparently to seek revival of an asylum claim there. Upon entering Canada, the Canadian border authorities detained him for approximately four hours and then returned him to the United States. Linares-Urrutia has produced a document by the Canada Border Services Agency reflecting that he "Departed Canada from Ft Erie" on April 25, 2012.

The Department of Homeland Security initiated the latest of his removal proceedings in 2013. In response, Linares-Urrutia filed (pro se) a petition for asylum, withholding of removal, and relief under the Convention Against Torture. During the proceedings before the Immigration Judge ("IJ") and the BIA, Linares-Urrutia was his only witness.

3

All Linares-Urrutia's claims arise from an allegation that the Salvadoran government abused and tortured him when he was a member of a revolutionary student group in the 1980s. Linares-Urrutia testified that the Salvadoran military shot him in the leg, detained him, beat him repeatedly, applied electricity to his genitals, and threatened to kill him. Although a different regime is now in power, Linares-Urrutia said he still fears persecution if he returns to El Salvador because his fellow former revolutionaries and their families believe that he cooperated with the former regime, and will seek revenge.

On August 21, 2013, the IJ denied Linares-Urrutia's claims and ordered him removed (yet again). The primary evidence Linares-Urrutia presented of his brief trip to Canada was his own testimony. Without commenting on the possible effect of his asserted brief time in Canada on the timeliness of his application, the IJ ruled that Linares-Urrutia's asylum claim was time-barred. Linares-Urrutia did not present the Canadian border document to the IJ at this proceeding. The IJ also denied Linares-Urrutia's other claims because he found that Linares-Urrutia had failed to establish either past persecution or a likelihood of future persecution if returned to El Salvador.

The BIA affirmed in part and remanded in part. It agreed with the IJ's untimeliness conclusion, holding that Linares-Urrutia presented insufficient evidence to show that he visited Canada in April 2012. But the BIA held that the IJ failed to indicate sufficiently whether Linares-Urrutia's testimony was credible as to past persecution or a likelihood of future persecution; so it remanded to the IJ for a new credibility finding.

On remand, the IJ found that Linares-Urrutia was in fact persecuted in the 1980s based on his political opinion. The IJ also found, however, that Linares-Urrutia could not establish a likelihood that he would be persecuted in the future, nor could he establish that any potential persecution would be due to his political opinions. The IJ dismissed his claims on those grounds. While he was before the IJ on that remand, Linares-Urrutia submitted the Canadian document reflecting his visit to Canada, but the IJ did not discuss the timeliness of the asylum claim in his remand decision.

On the next appeal, the BIA agreed with all the IJ's conclusions. It also specifically rejected Linares-Urrutia's claim that his asylum application was timely, holding that Linares-Urrutia failed to present sufficient evidence of his trip to Canada.

This appeal followed, and we appointed pro bono counsel to represent Linares-Urrutia.

**II**

We review the decisions of the IJ and BIA in tandem, and we review applications of law to fact de novo. Weng v. Holder, 562 F.3d 510, 513 (2d Cir. 2009). Because Linares-Urrutia was convicted of a controlled-substance offense, we have jurisdiction to entertain only constitutional claims and questions of law. Pierre v. Holder, 738 F.3d 39, 46 (2d Cir. 2013) (citing 8 U.S.C. § 1252(a)(2)(D)).

That jurisdictional limit disposes of most of this case. The IJ rejected Linares-Urrutia's claims for asylum based on future persecution, withholding of removal, and relief under the Convention Against Torture for two independent reasons: Linares-Urrutia failed to establish a likelihood of future persecution, and he failed to establish a nexus between any future persecution and a protected ground. We lack jurisdiction to hear challenges to these factual determinations, and we accordingly dismiss those portions of his appeal.

What remains is Linares-Urrutia's claim for "humanitarian asylum"--a claim that can be made "on the basis of the past persecution without regard to any well-founded fear of future persecution," and which is usually reserved for cases in which the past persecution was "particularly severe" or in which the applicant "may suffer other serious harm if removed." Kone v. Holder, 596 F.3d 141, 146 (2d Cir. 2010) (internal quotation marks omitted). Since the BIA affirmed that Linares-Urrutia had indeed established past persecution, untimeliness is the only ground on which the BIA denied the humanitarian asylum claim.

Section 208(a)(2)(B) of the Immigration and Nationality Act requires asylum applications to be filed, "within 1 year after the date of the alien's arrival

5

in the United States," 8 U.S.C. § 1158(a)(2)(B); but the implementing regulation states that, "[t]he 1-year period shall be calculated from the date of the alien's *last* arrival in the United States." 8 C.F.R. § 208.4(a)(2)(ii) (emphasis added); see also Joaquin-Porras v. Gonzales, 435 F.3d 172, 174 (2d Cir. 2006).

The timeliness of this asylum application depends on whether Linares-Urrutia's rebuffed effort to enter Canada counts as his "last arrival" into the United States. Linares-Urrutia filed his asylum application on April 18, 2013. He entered the United States after a significant absence in 2011; if that was his "last arrival," his application was untimely. If his "last arrival" was his crossing of the Peace Bridge and return to the United States on April 25, 2012, then his application was timely.

If we were to apply our old precedent, this case would be easy. In Joaquin-Porras, we stated that, "the term 'last arrival in the United States' should not be read to include an alien's return to the United States after a brief trip abroad." 435 F.3d at 179. However, after we decided Joaquin-Porras, the BIA issued a decision explicitly rejecting our holding, and giving the term "its natural and literal meaning, i.e., the alien's most recent arrival in the United States from a trip abroad." Matter of F-P-R-, 24 I. & N. Dec. 681, 683–84 (BIA 2008).

Since the term "last arrival" appears in a BIA regulation that gives a gloss on the statutory word "arrival," which we concluded is open to interpretation in Joaquin-Porras, 435 F.3d at 178-79, we are compelled to give deference under National Cable & Telecommunications Association v. Brand X Internet Services, 545 U.S. 967, 982-83 (2005). See also Hui Zheng v. Lynch, 632 F. App'x 626, 627 (2d Cir. 2015) (summary order) (concluding that F-P-R- trumps Joaquin-Porras). The BIA's second opinion in the present case failed to apply F-P-R-'s definition of "last arrival," so we therefore have jurisdiction to review its holding on timeliness. See Rosario v. Holder, 627 F.3d 58, 62 (2d Cir. 2010) (holding that we have jurisdiction to review the BIA's factual determinations when they are "flawed by an error of law"). That failure does not mean, however, that Linares-Urrutia's asylum application was necessarily timely. The F-P-R- decision--which involved a trip to Mexico of approximately a month to attend a stepfather's funeral--does not dictate the result in this case, which involves merely being held in Canada for four hours. See F-P-R-, 24 I. & N. Dec. at 685. We therefore grant

the petition in part and remand it in part for the BIA to determine, in the first instance, how F-P-R- may apply to this case.

While the government does not contest that F-P-R- controls or that Linares-Urrutia was at least briefly on Canadian soil in April 2012 (the Canadian border document is presumptive proof of that), it argues that we should nonetheless affirm the BIA on technical grounds. In the initial proceeding before the IJ, Linares-Urrutia failed to present the Canadian border document, and the BIA therefore accepted the IJ's determination that Linares-Urrutia failed to prove that he last arrived in 2012. However, since the BIA remanded the case to the IJ *solely* to consider further whether Linares-Urrutia established past persecution and a likelihood of future persecution, the government argues that the IJ properly declined to reconsider whether Linares-Urrutia "arrived" from Canada in 2012.

The government is correct that the initial BIA order set forth a purpose for the remand; but the order did not expressly limit the IJ's ability to revisit other issues. In the absence of any such limiting language or other indicia, the scope of a remand is general. See Matter of Patel, 16 I. & N. Dec. 600, 601 (BIA 1978); Johnson v. Ashcroft, 286 F.3d 696, 703 (3d Cir. 2002) ("Under Patel, the Immigration Judge's jurisdiction is narrowed only when the remand order is qualified or limited, which . . . must be more than a statement of purpose alone."). So even if we were inclined to reject a pro se litigant's asylum claim on this technical ground, the government's argument fails. The question whether Linares-Urrutia crossed the Canadian border was thus properly before the IJ on remand, and the Canadian immigration document was part of the record that the BIA should have considered in deciding, under F-P-R-, whether Linares-Urrutia "arrived" on April 25, 2012.

## III

Finally, the construal of the statutory word "arrival" and of the term "last arrival" in the regulations would benefit from clarification by Congress. We would adhere to this Circuit's precedent in Joaquin-Porras but for the BIA's opinion in F-P-R-, which is itself problematical and could easily be read to produce absurd results. This case exemplifies the problems that will ensue

7

absent a statutory fix.  One possible fix would be a set period of absence as a predicate to arrival, and other measures would doubtless occur to Congress.

## CONCLUSION

For the foregoing reasons, the petition for review is GRANTED in part and DISMISSED in part, and the case is REMANDED to the BIA for proceedings consistent with this opinion.