Juan Jaime MEDINA, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 92–5305
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

June 18, 1993.

---

**500**

Pete Magaro, Simon Azar–Farr, Azar–Farr & Ret, San Antonio, TX, for appellant.

William Barr, Atty. Gen., Dept. of Justice, David V. Bernal, David J. Kline, Robert L. Bombough, Dir., Off. of Immigration Lit., Civ. Div., Washington, DC, for appellee.

Richard M. Casillas, INS Dist. Dir., San Antonio, TX, John B.Z. Caplinger, INS Dist. Dir., New Orleans, LA, for other interested parties.

Before KING, DAVIS, and WIENER, Circuit Judges.

PER CURIAM:

In this appeal from the Board of Immigration Appeals (BIA), Petitioner Juan Jaime Medina appeals his order of deportation for failure to possess valid entry documents under § 241(a)(1) of the Immigration and Na-

1. 8 U.S.C. §§ 1101–1557, § 1251(a)(1).

tionality Act (INA),[1] Medina insists that the deportation proceedings are barred under the principle of res judicata because his citizenship was conceded by the Immigration and Nationality Service (INS) and appeal waived in a 1985 exclusion proceeding before an Immigration Judge (IJ). As we agree that res judicata precludes the INS from revisiting a prior adjudication, we vacate Medina's order of deportation.

## I

### FACTS AND PROCEEDINGS

A. *Background*

Medina, a resident of Mexico whose father was a United States citizen by virtue of his birth in Texas, became aware of his own United States citizenship (as the child of a citizen) in 1957 when applying for a student visa at a United States consulate in Mexico. The consular officials informed Medina that he was an American citizen and gave him a citizenship identity card. Medina, with his father and mother, thereafter moved to Chicago where they lived with relatives. Experiencing difficulty earning a living in Chicago, the family moved to San Antonio, where Medina applied for admission to college but could not attend because he did not receive financial assistance. Relatives in Mexico offered to assist with the cost of his studies provided that he went to college in Mexico.

Medina went to Mexico for a few days to make arrangements to matriculate there. He returned to the United States for a short period, then went back to Mexico where he began his studies. During the course of his education in Mexico, Medina made periodic visits to his family in Texas. After graduation, Medina returned to the United States to seek employment. Unable to find a job, he returned to Mexico, married, and found employment there.

In 1984 Medina applied for a certificate of citizenship and, accompanied by his father, was interviewed by an immigration inspector. The inspector asked Medina to "tell his story," which the inspector then translated into a sworn statement that Medina signed. That

statement approximated Medina's time in the United States as one year in Chicago and six to eight months in San Antonio.

Following the interview, the INS began exclusion proceedings against Medina as an alien who was not admissible to the United States. The IJ held a hearing, at which Medina's attorney submitted a brief in support of Medina's citizenship. Although the parties and the judge erroneously believed that Medina was entitled to citizenship only if he had resided continuously for five years in the United States when in fact only a two year residence was required, Medina argued that he complied even with the more stringent five-year requirement under the doctrine of constructive residence. The INS conceded that Medina had qualified as a citizen and waived appeal. The IJ issued an order admitting Medina to the United States as an American citizen.

After his admission to the United States as a citizen, Medina applied for and was granted a passport, which the State Department issued as valid until 1996. Later, however, the State Department informed Medina that because it was unclear whether he was indeed a citizen, his passport would be valid only until 1987. Subsequently, the INS issued an order to Medina to show cause why he should not be deported *as an alien* who, at the time of entry, was not in possession of valid entry documents and not exempted from the possession of such papers.

B. *Current Proceedings*

In the deportation proceedings before the IJ, Medina testified more specifically that he had resided in the United States for approximately three years—in Chicago for nearly a year and a half and in San Antonio for another year and a half. He explained that this was not inconsistent with his original sworn statement, which was merely an approximation of his time in the United States, because the official preparing the sworn statement did not ask for specific dates. Nevertheless, the IJ expressly found that the old sworn statement was more credible than

Medina's testimony at the current deportation proceedings, noting that Medina had consulted in the interim with his attorney and that his live testimony was self-serving. The IJ concluded that Medina's testimony had been coached. Consequently, the IJ found that Medina had not been present in the United States for the requisite two year period.

On appeal, the BIA affirmed, adopting the IJ's credibility findings. In addition, the BIA rejected Medina's contention that res judicata barred the instant deportation suit, positing that res judicata as applied in administrative proceedings was flexible and did not apply when the first forum had applied the incorrect legal standard. Moreover, the BIA held that res judicata did not apply in Medina's case because the INS had conceded Medina's citizenship at the exclusion proceeding and thus did not litigate the issue. Consequently, the BIA affirmed the IJ's order of deportation. Medina timely appealed.

## II

## APPLICABLE LAW

Before reaching the merits of Medina's res judicata claim, a brief overview of the applicable law should prove helpful. At the time of Medina's birth, the statute in effect provided that any child born outside of the United States of an American parent was an American citizen provided that the child lived in the United States continuously for five years immediately prior to his eighteenth birthday. Specifically, the statute required the child to reside in the United States between the ages of thirteen and eighteen.[2] This provision was repealed and replaced by a physical residence requirement of five nonconsecutive years, with residence beginning prior to age sixteen.[3]

Before Medina reached the age of sixteen, this provision too was replaced with a liberalized residence requirement of five years between the ages of fourteen and twenty-eight.[4] Although Medina did not comply with this

---

2. Act of 1934, 48 Stat. 797.

3. Nationality Act of 1940, 54 Stat. 1138–39, § 201(g).

4. Immigration and Nationality Act of 1952, 66 Stat. 163, 235, § 301(b).

provision—which was applicable to him—the residence requirement was liberalized yet again to require a continuous physical residence for but two years, at anytime between the ages of fourteen and twenty-eight, and to permit brief absences during those two years so long as in the aggregate they did not total sixty days or more.[5] This provision was applicable to all persons born abroad after May 24, 1934, thereby covering Medina. Thus, to meet the citizenship requirements, Medina only had to reside in the United States continuously for two years, without aggregate absences of sixty days.

### III

### ANALYSIS

#### A. *Standard of Review*

Although we exercise plenary review when considering the BIA's interpretation of governing immigration law, we defer to its interpretation unless there are compelling indications that it is wrong.[6] We review de novo the BIA's holding that res judicata did not bar the deportation proceedings.[7]

#### B. *Res Judicata*

■ The INS steadfastly insists that res judicata does not apply in the instant case, advancing two arguments in support of its position. First, the INS contends that Congress did not intend that a determination to admit an alien in exclusion proceedings would preclude the Attorney General from thereafter instituting deportation proceedings to determine whether the alien was excludable at the time of entry, citing § 241(a)(1) of the INA.[8] Second, the INS echoes the BIA's view that res judicata is a flexible concept and has no applicability with respect to questions of law. The INS also mentions in passing that the original IJ's decision was nothing more than a "bare order that Medina

be admitted as a United States Citizen," apparently in reference to the BIA's conclusion that there was no opportunity to litigate the issue. We address each contention in turn.

#### 1. *Section 241(a)(1)*

Section 241(a)(1) of the INA provides:

> Any alien in the United States (including an alien crewman) shall, upon order of the Attorney General, be deported who—(1) at the time of entry was within one or more of the classes of aliens excludable by the law existing at the time of such entry.[9]

The INS argues that this provision demonstrates that Congress did not intend to prevent the Attorney General from deporting an alien who has been admitted after an inspection and inquiry conducted pursuant to §§ 235[10] and 236(a).[11] In support of this contention, the INS offers a 1906 Supreme Court decision in which the Court recognized that Congress allowed deportation proceedings after an initial determination of admissibility that the alien was not entering in violation of the law.[12]

While the INS may well be correct in stating the general rule that admission into the United States does not preclude a subsequent deportation hearing, that rule is not applicable to the case we review today. Notable in each case cited by the INS (as well as in each case found in the course of our own independent research) involving subsequent deportation proceedings, the person admitted and later deported had *not* been recognized formally as a United States citizen; neither had a passport been issued as a result of such recognition. We find this distinction compelling, especially in light of the Supreme Court's recognition that citizenship is a "priceless benefit," the wrongful denial of which is "more serious than a taking of one's

---

5. Immigration and Nationality Act of 1972, 86 Stat. 1289.

6. *Liwanag v. INS*, 872 F.2d 685, 688 (5th Cir. 1989).

7. *Schmueser v. Burkburnett Bank*, 937 F.2d 1025, 1031 (5th Cir.1991).

8. INA § 1251(a)(1).

9. *Id.*

10. *Id.* § 1225.

11. *Id.* § 1226(a).

12. *Pearson v. Williams*, 202 U.S. 281, 284, 26 S.Ct. 608, 609, 50 L.Ed. 1029 (1906).

property, or the imposition of a fine or other penalty."[13]

Moreover, the language of the very statute relied on by the INS states only that "aliens" who are excludable at time of entry may be deported. An alien is "any person not a citizen or national of the United States."[14] Medina, on the other hand, ceased to be an alien once the IJ ordered him admitted into the United States as a citizen. Consequently, we refuse to read the language so broadly or so absurdly that the INS could revisit a valid, unchallenged adjudication of citizenship through subsequent deportation proceedings initiated years or even decades later.

### 2. Administrative Res Judicata

Res judicata is the venerable legal canon which proclaims that a valid and final judgment precludes a second suit between the same parties on the same claim or any part thereof.[15] Although jurisprudence has required traditionally that the judgment in the first case be "on the merits," it is more accurate to state that "in the first litigation there was an opportunity to get to the merits."[16]

The INS reiterates the position adopted by the BIA that res judicata in administrative proceedings is a flexible doctrine (whatever that means) and is limited to factual findings. We find no viable support for that position. The Supreme Court has recognized that: "[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose."[17] The

BIA and the INS invite us to read the phrase, "and resolves disputed issues of fact," as limiting res judicata to factual findings. We "regret" that invitation too. In context, this language is tied inextricably to the requirement that the administrative proceeding be *adjudicatory* in nature—which inevitably involves factual or legal resolutions, or both—as res judicata does not apply to non-adjudicatory proceedings. The proper dichotomy to examine is adjudication or non-adjudication, not fact or law.

■ In the first encounter between Medina and the INS, the administrative proceeding was a typically adjudicatory affair: resolution of contested issues of fact and application of legal principles to the facts thus determined. Does the INS really believe that, under the Court's pronouncement in *Utah Constr. & Mining Co.*, res judicata would preclude revisiting the factual conclusions of the original proceeding but leave the legal issues open to question for an infinite number of trips around the carousel in repeated efforts to grab the brass ring missed on the first try? Surely not. Res judicata precludes subsequent litigation between the same parties on the same issues once there has been a valid final judgment—as there was here—with all post-judgment remedies exhausted, including exhaustion by waiver or expiration of delays. It matters not whether such final judgment rested on purely factual determinations or on purely legal issues or— as in most cases, including the instant case— on a combination of fact and law.

■ What does matter is whether the original case before the administrative agen-

13. *Schneiderman v. United States*, 320 U.S. 118, 122, 63 S.Ct. 1333, 1335, 87 L.Ed. 1796 (1943).

14. *Id.* § 101, 8 U.S.C. § 1101.

15. Similarly, the doctrine of collateral estoppel, also known as issue preclusion, provides that an issue of law or fact litigated and determined by a valid and final judgment, in which the determination of that issue was essential, cannot be relitigated in a subsequent proceeding. Although res judicata (or claim preclusion) governs the instant case, we note that collateral estoppel would lead us to the same result. The issue— framed as Medina's citizenship—was litigated and determined by a valid final judgment, in

which the determination of citizenship was essential. The INS suggests that, because it conceded Medina's citizenship, it did not actually litigate the issue. This suggestion is wholly without merit. The INS presented the central issue of Medina's citizenship to the IJ for determination. Undeniably, that action constitutes litigation, notwithstanding the INS' subsequent concession.

16. CHARLES ALAN WRIGHT, LAW OF FEDERAL COURTS (1983) 680–81.

17. *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966).

**504**

cy was adjudicatory. If it was, it has the "authority of the thing adjudged" to the same extent as does a case first litigated in a court of law. The only considerations for purposes of res judicata are whether (1) the case in which the valid, final judgment was rendered involved the same parties and issues, and (2) there was an opportunity to reach the merits on those issues. Here, all those requirements were met.

 Again, res judicata precludes a second suit on the same issue between the same parties when there has been a valid and final judgment on that issue; and it makes no difference that the final, valid judgment may have been based on an erroneous factual finding or an erroneous understanding of law, or both. The only considerations for purposes of res judicata is whether the judgment was final and valid, and there was an opportunity to reach the merits. Here, these requirements were met.[18]

### IV

### CONCLUSION

The doctrine of res judicata mandates that a valid and final judgment on a given claim litigated by the same parties precludes a second action by any of them on that claim or any part of it. ·The absolute need for such a doctrine in our or any legal system is unassailable. Despite its arguments in the instant case, the INS can offer no valid reason for refusing to acknowledge the authority of this indisputable doctrine except—in simplest terms—that the INS is unhappy now with the outcome of the initial proceedings. This is exactly the type of situation in which res judicata is meant to preclude a subsequent action. The INS had its opportunity in 1985 to oppose Medina's claim to citizenship. Instead, it conceded—perhaps incorrectly—the validity of his claim to that status. Any doubt about the finality of the results of that act is dispelled by the realization that such issue was joined but that the INS then waived appeal of that determination. Having

done so, the INS cannot now challenge Medina's citizenship simply by treating the original proceeding as though it had never happened and starting all over again under a different section of the immigration law.

For the foregoing reasons, Medina's petition is GRANTED, his deportation order is VACATED, and the INS is ORDERED to certify Medina's citizenship by issuance of appropriate documentation.

---

18. We also reject the BIA's conclusion that there was no opportunity to litigate Medina's citizenship. The record demonstrates that the INS was present at a hearing before the IJ, but *conceded* Medina's citizenship and waived appeal. Obviously, there was an *opportunity* to litigate the issue, an opportunity which *the INS declined.* Consequently, it cannot now object to the decision on grounds that it did not have an opportunity to litigate the issue.