United States Court of Appeals
Fifth Circuit

**F I L E D**

August 1, 2006

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 04-30247

_____

ADALBERTO ANDRADE,

Petitioner-Appellant,

versus

ALBERTO R. GONZALES, U.S. ATTORNEY GENERAL,
JAMES W. ZIGLAR; CHRISTINE G. DAVIS; EDWARD J. MCELROY;
BUREAU OF IMMIGRATION AND CUSTOMS ENFORCEMENT;
UNITED STATES DEPARTMENT OF JUSTICE,

Respondents-Appellees.

Appeals from the United States District Court
for the Western District of Louisiana

**ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES**

Before JONES, Chief Judge, and JOLLY and HIGGINBOTHAM, Circuit
Judges.

EDITH H. JONES, Chief Judge:

This court affirmed the district court's denial of
Andrade's petition for a writ of habeas corpus. Andrade v.
Gonzales, 134 Fed. Appx. 729 (2005). The Supreme Court vacated and
remanded for further consideration in light of 8 U.S.C.
§ 1252(a)(2)(D). Having received supplemental briefing from the
parties as to the effect of § 1252(a)(2)(D) upon the instant case,
we convert Andrade's habeas petition into a petition for review of
the Board of Immigration Appeals ("BIA"), and DENY relief.

## I.  Background

Andrade is a citizen and national of Cape Verde.  He entered the United States as a visitor in 1988, and was accorded lawful permanent resident status on or before June 19, 1998. Between 1995 and 2000, Andrade was convicted of numerous offenses. Andrade's criminal record includes multiple convictions for assault and battery, a conviction for unlawful possession of a firearm, and repeated violations of domestic abuse prevention orders.  As a result of such transgressions, the former Immigration and Naturalization Service ("INS") issued a Notice to Appear, and on December 3, 1999, an Immigration Judge ("IJ") ordered Andrade removed.  While free on bond pending his appeal to the BIA, Andrade was again convicted of assault and battery and two counts of violating an abuse prevention order.

On May 10, 2001, the BIA remanded Andrade's case to the IJ to determine whether Andrade was entitled to a discretionary adjustment of status.  On August 1, 2002, after determining that Andrade's twenty-one convictions outweighed the mitigating interests of his American wife and children, the IJ declined to adjust Andrade's status and again ordered his removal.  Andrade again appealed to the BIA, which affirmed the IJ on May 7, 2003. Andrade's subsequent Motion to Reconsider was denied by the BIA on June 30, 2003, and his case became administratively final.

On November 7, 2002, pursuant to 28 U.S.C. § 2241, Andrade filed a petition for a writ of habeas corpus in the Eastern District of New York, alleging that his mandatory detention under 8 U.S.C. § 1226(c) violated his Fifth Amendment due process rights. The district court stayed Andrade's removal pending the resolution of his habeas petition, and then transferred the case to the Western District of Louisiana, which lifted the stay. In Louisiana, Andrade amended his petition to add challenges to his classification as an aggravated felon, as well as to the institution of removal proceedings against him based on crimes that predate his 1998 adjustment of status.

Andrade's petition for review of the BIA decision was dismissed by this court on October 3, 2003; his habeas petition was dismissed by the Louisiana district court on March 2, 2004. Andrade appealed the denial of habeas relief. While his appeal was pending, the REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231 (2005) became law. This court dismissed Andrade's appeal on June 17, 2005, though it did so without addressing the effects of the REAL ID Act upon his case. The Supreme Court granted certiorari, vacated this court's decision, and remanded for further consideration in light of 8 U.S.C. § 1252(a)(2)(D).

## II.  Discussion

The REAL ID Act divests the district courts of jurisdiction over the habeas petitions of aliens; instead, REAL ID

Act § 106 states that "a petition for review shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of [the INA]." 8 U.S.C. § 1252(a)(5). This court, in Rosales v. Bureau of Immigration & Customs Enforcement, 426 F.3d 733 (5th Cir. 2005), held that "habeas petitions on appeal as of May 11, 2005 [the effective date of the REAL ID Act] . . . are properly converted into petitions for review." Id. at 736. As Andrade's habeas appeal was pending on May 11, 2005, this court erred in not converting his case into a petition for review. In a petition for review, the BIA's determinations as to purely legal questions are reviewed de novo. Omagah v. Ashcroft, 288 F.3d 254, 258 (5th Cir. 2002). This court continues to lack jurisdiction to review issues of fact pertaining to the discretionary decisions of the BIA. See 8 U.S.C. §§ 1252(a)(2)(B),(C).

Before passage of the REAL ID Act, the criminal alien bar of 8 U.S.C. § 1252(a)(2)(C) prevented the courts from entertaining petitions for review of removal orders predicated upon an aggravated felony or a firearms offense. Under the REAL ID Act, however, this court may now reach the merits of a criminal alien's petition for review if the petition raises constitutional claims or pure questions of law. See 8 U.S.C. § 1252(a)(2)(D).

Andrade raised three issues on appeal, all of which fall within the purview of § 1252(a)(2)(D). First, he argues that his mandatory detention, pursuant to 8 U.S.C. § 1226(c), is

4

unconstitutional. Second, he argues that he was improperly classified as an aggravated felon for the purposes of his immigration proceedings. Finally, Andrade argues that the Department of Homeland Security ("DHS") should be estopped or barred by res judicata from bringing removal proceedings against him on the basis of his pre-1998 convictions, given that the INS was aware of his criminal history and nevertheless granted adjustment of status in 1998. All three claims are without merit, and will be addressed in turn.

### A. Detention

Andrade challenges his detention on the basis of 8 U.S.C. § 1226(c), a section of the INA that concerns the detention of aliens pending a final order of removal, arguing that his extended detention while his appeal is pending violates his Fifth Amendment due process rights. The Government counters that such a challenge is moot, as Andrade's case became administratively final in 2003 and is now governed by 8 U.S.C. § 1231. In response, Andrade argues that as a pro se litigant, his petition should be construed liberally, and notes that he argued in his objections to the original magistrate's report and recommendations that if § 1231 applied, his continued detention was unconstitutional per Zadvydas v. Davis, 533 U.S. 678, 121 S. Ct. 2491 (2001).

The Government is correct that Andrade's detention is now governed by § 1231. Section 1231 defines the circumstances under

which an alien enters the "removal period," after which the Government is required in most situations to remove the alien within ninety days.  Under 8 U.S.C. § 1231(a)(1)(B), the removal period begins on the latest of the following:

> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

It is clear both that Andrade's case became administratively final on June 30, 2003, and that 8 U.S.C. § 1231(a)(1)(B)(iii) does not apply here, as Andrade was detained under an immigration process. Although Andrade's removal order is now being judicially reviewed, 8 U.S.C. § 1231(a)(1)(B)(ii) only applies to those cases in which a court also issued a stay of removal.  The district court in the Eastern District of New York initially ordered a stay, but it lacked the jurisdiction to do so, and the district court in the Western District of Louisiana properly lifted the stay.  This court affirmed the lifting of the stay.  See Andrade v. Ashcroft, No. 03-30899 (5th Cir. Mar. 30, 2004).  Thus, the date at which Andrade's case became administratively final is the only one of the three triggering events under 8 U.S.C. § 1231(a)(1)(B) that is applicable here, and Andrade can no longer state a claim for relief under 8 U.S.C. § 1226(c).

6

The Government errs, however, in suggesting that Andrade raised a _Zadvydas_ challenge for the first time on appeal. We must construe the pleadings of pro se litigants liberally, see _Perez v. United States_, 312 F.3d 191, 194-95 (5th Cir. 2002), and Andrade, who had been detained for more than three years at the time his habeas appeal first reached this court, plainly articulated a constitutional challenge to the length of his detention. Moreover, Andrade did raise _Zadvydas_ and § 1231 in his objections to the recommendations of the magistrate judge, so the fact that § 1226(c) does not govern Andrade's detention does not make his claim moot.

Nevertheless, Andrade's ultimate constitutional claim must fail, as his case is distinguishable from _Zadvydas_. _Zadvydas_ concerned civil confinement that was "not limited, but potentially permanent." _Zadvydas_, 533 U.S. at 691, 121 S. Ct. at 2499. There, the Government had thrice failed to secure the transfer of an alien subject to a final order of removal, and could offer no promise of future success, as all the nations to which the alien had ties had refused his admission on the ground that he was not a citizen. _Id._ _Zadvydas_ thus created a "6-month presumption" of the validity of detention under § 1231, after which an alien could attack the reasonableness of his continued detention. The Court's decision creates no specific limits on detention, however, as "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." _Id._ at 701, 121 S. Ct. at 2505. The alien bears the

7

initial burden of proof in showing that no such likelihood of removal exists. Id. In the instant case, Andrade has offered nothing beyond his conclusory statements suggesting that he will not be immediately removed to Cape Verde following the resolution of his appeals. His constitutional claim is meritless.

**B. Aggravated Felony**

8 U.S.C. § 1252(a)(2)(C) strips this court of jurisdiction to review the final removal order of an alien convicted of an aggravated felony. However, per the REAL ID Act and 8 U.S.C. § 1252(a)(2)(D), this court retains jurisdiction over pure questions of law, such as the issue whether Andrade's assault and battery conviction was properly construed as an aggravated felony. Andrade was ordered removed on the basis of a firearms offense and a Massachusetts conviction for assault and battery under MASS. GEN. LAWS Ch. 265, § 13A. The former provides an independent ground for removal even in the event that Andrade prevails on his claim that the latter does not constitute an aggravated felony. Nevertheless, because there are potential collateral consequences to Andrade's being removed for an aggravated felony conviction, we shall examine the merits of his appeal.[1]

---

[1] An alien previously removed on aggravated felony grounds cannot at any time be admitted into the United States without the consent of the Attorney General. 8 U.S.C. § 1182 (a)(9)(A)(i).

8

An alien who is convicted of an "aggravated felony" is deportable at any time. 8 U.S.C. § 1227(a)(2)(A)(iii). For the purposes of the INA, an aggravated felony is, inter alia, any "crime of violence . . . for which the term of imprisonment is at least one year." 8 U.S.C. § 1101(a)(43)(F); see also 18 U.S.C. § 16 (defining "crime of violence"). The law in question, MASS. GEN. LAWS Ch. 265, § 13A, states in relevant part as follows:

> (a) Whoever commits an assault or an assault and battery upon another shall be punished by imprisonment for not more than 2 1/2 years in a house of correction or by a fine of not more than $1,000.

> (b) Whoever commits an assault or an assault and battery:

>> (i) upon another and by such assault and battery causes serious bodily injury;
>> (ii) upon another who is pregnant at the time of such assault and battery, knowing or having reason to know that the person is pregnant; or

>> (iii) upon another who he knows has an outstanding temporary or permanent vacate, restraining or no contact order or judgment issued . . .in effect against him at the time of such assault or assault and battery; shall be punished by imprisonment in the state prison for not more than 5 years or in the house of correction for not more than 2 1/2 years, or by a fine of not more than $5,000, or by both such fine and imprisonment.

Unsurprisingly, this court has not previously addressed whether a conviction for assault in Massachusetts qualifies as an aggravated felony under the INA. As noted by Andrade, § 13A is a divisible statute, one which "covers two separate crimes — one involving actual (or potential) physical harm and the other involving a non-consensual but unharmful touching." United States

9

v. Harris, 964 F.2d 1234, 1236 (1st Cir. 1992). Thus, a conviction under § 13A is not an aggravated felony per se. Id.; see also United States v. Jones, 235 F.3d 342 (7th Cir. 2000)(concluding a § 13A conviction was not a "crime of violence" where there was insufficient evidence in charging instrument to prove action beyond unwanted touching). In the instant case, however, such distinctions are irrelevant; the 1996 conviction for which Andrade was ordered removed also concerned a violation of a domestic abuse protective order. Such an act clearly had as "an element the use, attempted use, or threatened use of physical force against the person or property of another," making it a crime of violence under 18 U.S.C. § 16(a). Thus, the BIA did not err in characterizing Andrade's 1996 assault and battery conviction as an aggravated felony.

## C. Res Judicata

Finally, Andrade argues that the INS's 1998 decision to grant him adjustment of status bars the DHS from seeking removal based upon pre-1998 convictions that were known to the INS at the time his status was adjusted.[2]

---

[2] To the extent Andrade also argues that the Government is estopped from bringing removal proceedings against him, such a claim must be rejected. It is unclear whether equitable estoppel can ever apply to the Government, but in any event, equitable estoppel "will not lie against the Government as against private litigants." Office of Pers. Mgmt. v. Richmond, 496 U.S. 414, 419, 110 S. Ct. 2465, 2469 (1990). Valid assertions of estoppel are "rare indeed;" at the very least, Andrade would have to demonstrate affirmative misconduct — the affirmative misrepresentation or concealment of material fact — on the part of the INS. Moosa v. INS, 171 F.3d 994, 1003 (5th Cir. 1999). As Andrade does not allege affirmative misconduct by the Government, his claim for equitable estoppel must fail.

The doctrine of res judicata can apply to adjudicatory removal proceedings.  Medina v. United States, 993 F.2d 499, 503 (5th Cir. 1993).  However, the issue whether applications for adjustment of status are to be given res judicata effect in later deportation cases is novel in this circuit.  Medina is instructive on this issue, as the court held that res judicata barred the INS from disputing an alien's citizenship at deportation proceedings when the issue had been resolved in the alien's favor in an earlier exclusion adjudication.  Medina presented a straighforward application of res judicata, given that a "valid and final judgment precludes a second suit between the same parties on the same claim or any part thereof . . . [when] in the first litigation there was an opportunity to get to the merit."  Medina, 993 F.2d at 503.  Central to the Medina decision was the fact that the exclusionary proceedings were "adjudicatory in nature," and that the administrative "agency [was] acting in a judicial capacity" when it reached its decision.  Id.

Medina is thus distinguishable from to the instant case, as Andrade's application for an adjustment of status cannot be understood to be a valid and final judgment within a "judicial" proceeding.  Whereas the original proceeding in Medina was held before an IJ, and both sides were represented by counsel and given the opportunity to brief relevant issues, see id. at 501, applications for adjustment of status are not normally adversarial in nature, and do not involve an IJ.  Adjustment of status is a

11

discretionary act by the executive branch, see 8 U.S.C. § 1255(a), and is not appealable; further, the Attorney General maintains the authority to initiate removal proceedings against any alien[3] for the reasons listed in 8 U.S.C. § 1227.  We therefore conclude that Andrade's adjustment of status was not adjudicatory in nature, and thus is not entitled to res judicata effect.

### III.  Conclusion

For the foregoing reasons, Andrade's petition for review is **DENIED**.

---

[3]     It is worth noting that the petitioner in <u>Medina</u> had been granted citizenship, making the Government's actions inapplicable under the INA.

12