**Mahamadou DARAMY, a/k/a Jakara Drammeh, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

No. 08–2537.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Jan. 11, 2010.

Filed: Feb. 8, 2010.

Joseph C. Hohenstein, Esq., Orlow, Kaplan & Hohenstein, Philadelphia, PA, for Petitioner.

Andrew J. Oliveira, Esq., United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before: SCIRICA, Chief Judge, BARRY and SMITH, Circuit Judges.

OPINION OF THE COURT

SCIRICA, Chief Judge.

Appellant–Petitioner Mahamadou Daramy appeals the denial of his applications for asylum, withholding of removal, and protection under Article 3 of the UN Convention Against Torture ("CAT"). The Immigration Judge ("IJ") held that the "law of the case" doctrine precluded Daramy's applications because they are "in sum and substance the same applications for relief" as the ones Daramy previously submitted and which were denied. Additionally, the IJ found Daramy's applications untimely because they were not filed "within one year after the date of the alien's arrival in the United States." The Board of Immigration Appeals ("BIA") affirmed on both grounds. Daramy filed a timely appeal. We will vacate and remand.[1]

I.

Daramy is a native and citizen of Sierra Leone. He first arrived in the United States, without inspection or authorization, on or about April 1, 2001. On May 5, 2001, he filed an application for asylum based on race, religion, and nationality; withholding of removal; and protection under CAT. In support of his application, Daramy stated that Revolutionary United Front ("RUF") rebels attacked his village in 1999, destroyed his family home, shot his parents to death, and took him to a rebel camp, where he was beaten and jailed for refusing to join their cause. Daramy claimed he was freed when the camp was liberated and then traveled to a refugee camp in Guinea, where he spent six months. Daramy stated that a friend at the camp assisted him in procuring documents and a ticket to come to the United States.

On December 21, 2004, the Department of Homeland Security ("DHS") served Daramy with a Notice to Appear. The hearing was held before the Immigration

---

1. The BIA had jurisdiction over this matter under 8 C.F.R. § 1003.1(b)(3), which grants it appellate jurisdiction over decisions of immigration judges in removal cases. We have jurisdiction to review a final order of removal under 8 U.S.C. § 1252. *Briseno–Flores v. Att'y Gen.*, 492 F.3d 226, 228 (3d Cir.2007). Removal proceedings occurred in Newark, New Jersey, and venue is therefore proper under 8 U.S.C. § 1252(b)(2).

Court in Seattle, Washington on April 20, 2005, and on November 2, 2005, the IJ denied Daramy's application. The IJ found Daramy not credible because of "material inconsistencies between [his] testimony and his written statements," and questioned the authenticity of Daramy's documents. The IJ also concluded Daramy's application was untimely because Daramy did not have a passport and therefore could not prove when he first arrived in the United States. Additionally, the IJ stated that even if Daramy was found credible, the court would deny relief for failure to show that alleged persecution occurred on account of a protected ground: "The respondent testified that he does not know if his family was politically active and he stated no grounds why he or his family was targeted by the rebels other then [sic] to recruit the respondent and his brother into the rebel forces. A recruitment is not a protective ground." Finally, the IJ noted that country conditions in Sierra Leone had changed since 1999 "to such a material extent that they have rebutted any reasonably [sic] possibility that the respondent would be harmed should he be returned to Sierra Leone." The IJ also denied CAT protection, finding "no competent credible objective evidence that should the respondent be returned to Sierra Leone," he would be tortured. Daramy's request for voluntary departure was also denied because he did not have a valid travel passport.

On November 8, 2005, Daramy filed a motion to reopen and reconsider, arguing that the court made numerous errors in its November 2, 2005 decision. In the alternative, Daramy requested that the court grant him voluntary departure because he had since obtained valid travel documents. On November 29, 2005, the Immigration Court reopened the proceedings and granted Daramy voluntary departure. On the merits, however, the court denied the motion, stating that even if adverse findings regarding Daramy's credibility were erroneous, the outcome would not change because of the alternative ground for the IJ's November 2, 2005 decision—material change in country conditions.

On November 30, 2005, Daramy filed a timely appeal with the BIA. During the pendency of the appeal, on or about April 19, 2007, Daramy departed from the United States to Gambia to look for his sister. While he was in Gambia, the BIA affirmed the IJ's decision, adopting the portions of the IJ's opinion regarding untimeliness of the asylum application, change in country conditions in Sierra Leone, and lack of evidence for protection under CAT. Daramy did not file a petition for review with the Court of Appeals for the Ninth Circuit.

On July 8, 2007, Daramy returned to the United States, without inspection or authorization. On July 19, 2007, the DHS served him with a Notice to Appear. At the hearing before the Immigration Court in Newark, New Jersey, on August 2, 2007, Daramy conceded removability. On August 17, 2007, Daramy filed new applications for asylum based on political opinion and membership in a particular social group, withholding of removal, and CAT protection. The factual basis for these applications was the same as that for the applications filed in 2001.

On December 20, 2007, the IJ of the Immigration Court in Newark, New Jersey denied Daramy's new applications. Finding the applications were "in sum and substance the same applications for relief submitted to the court on April 20, 2005," the IJ concluded that the law of the case doctrine precluded Daramy from making the same applications for relief. Additionally, the IJ held the applications were untimely because "[w]hile the Respondent 'last arrived' in the United States on July 8, 2007 the court finds that the Respondent has in actuality been 'present' in the United States since April 2001, except for

a brief trip to Gambia for the express intention of returning to the United States to reapply for asylum." Accordingly, the court found "that in determining Respondent['s] eligibility for asylum, April 2001 and not July 8, 2007, is the date on which Respondent['s] 'presence' in the United States commenced."

Daramy appealed to the BIA, and on April 28, 2008, the BIA adopted and affirmed the IJ's decision. Specifically the BIA held that "this case involves the litigation of already-disposed-of issues, albeit in new proceedings to remove the same individual," and "the legal issues decided expressly or by implication in the prior immigration proceedings involving the same individual shall apply under the 'law of the case' doctrine in the interests of judicial economy, jurisprudential integrity, and finality in immigration proceedings." The BIA also adopted the IJ's "additional finding that the respondent may not now seek asylum as he has failed to file his application within one year of his arrival in the United States," because his last arrival "followed a temporary departure from the United States rather than a flight from prosecution."

Daramy filed a timely appeal.[2]

## II.

## A.

■ The BIA affirmed the IJ's application of the law of the case doctrine to deny

relief based on the findings in the initial removal proceedings in 2005. The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983)); *see also ACLU v. Mukasey*, 534 F.3d 181, 187 (3d Cir.2008). "Law of the case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." *Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3d Cir.1997) (quoting 18 Charles A. Wright, Arthur R. Miller & Edward Cooper, *Federal Practice and Procedure* § 4478, at 788 (1981)); *see also Casey v. Planned Parenthood of Se. Pa.*, 14 F.3d 848, 856 (3d Cir.1994). Thus, the law of the case doctrine "do[es] not apply between separate actions." 18B Charles A. Wright, Arthur R. Miller & Edward Cooper, *Federal Practice and Procedure* § 4478, at 638–39 (2d ed.2002); *see also Soc'y of Separationists, Inc. v. Herman*, 939 F.2d 1207, 1214 (5th Cir. 1991) ("[The prior case] and the case before us are altogether separate proceedings, so law of the case is inapplicable."); *Harbor Ins. Co. v. Essman*, 918 F.2d 734, 738 (8th Cir.1990).

---

**2.** Where "the BIA both adopts the findings of the IJ and discusses some of the bases for the IJ's decision, we have authority to review the decisions of both the IJ and the BIA." *Chen v. Ashcroft*, 376 F.3d 215, 222 (3d Cir.2004). We exercise plenary review over an agency's legal determinations, "subject to the principles of deference articulated in *Chevron v. Natural Resources Defense Council*, 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)." *Pierre v. Att'y Gen.*, 528 F.3d 180, 184 (3d Cir.2008) (citing *Briseno–Flores*, 492 F.3d at 228 (3d Cir.2007) and *Wang v. Ash-*

*croft*, 368 F.3d 347, 349 (3d Cir.2004)). We must uphold the factual findings if they were "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias–Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992); *Abdille v. Ashcroft*, 242 F.3d 477, 483–84 (3d Cir.2001) ("Under the substantial evidence standard, [the agency's factual findings] must be upheld unless the evidence not only supports a contrary conclusion, but compels it.").

The law of the case doctrine is inapposite to this case because the removal proceedings in question, initiated with service of a Notice to Appear on July 19, 2007 and held in Newark, New Jersey, are separate from the removal proceedings previously initiated with service of a Notice to Appear on December 21, 2004 and held in Seattle, Washington. The IJ applied the law of the case doctrine based on Daramy's concession "that his applications for relief submitted to this court on August 17, 2007 are in sum and substance the same applications for relief submitted to the court on April 20, 2005." The BIA correctly noted that "this case involves the litigation of already-disposed-of issues, albeit in new proceedings to remove the same individual." But its legal conclusion that "[i]n such a situation, the legal issues decided expressly or by implication in the prior immigration proceedings involving the same individual shall apply under the 'law of the case' doctrine'" was erroneous because the law of the case doctrine does not apply to separate actions.

The IJ and BIA relied on legal authorities applying the law of the case doctrine in the same case, not separate cases. In *In re S–Y–G–*, 24 I. & N. Dec. 247, 250 (BIA 2007), the BIA held that the IJ's adverse credibility determination, which was affirmed by the BIA and not appealed to the Court of Appeals, remained the law of the case on remand from a subsequent appeal on a separate issue. Therefore, *In re S–Y–G–* involved the same removal proceedings. The BIA also cited *In re City of Phila. Litig.*, 158 F.3d 711 (3d Cir.1998), where we stated that "[u]nder the law of the case doctrine, one panel of an appellate court generally will not consider questions that another panel has decided on a prior appeal in the same case." *Id.* at 717. Finally, the Operating Policy and Procedure Memorandum 01–02–Changes of Venue,[3] from the Office of the Chief Immigration Judge, instructs immigration judges to follow the law of the case doctrine in cases where venue is changed. Here, no change of venue took place—the removal proceedings in Newark, New Jersey were separate from those in Seattle, Washington. The IJ and the BIA erred in applying the law of the case doctrine here because the doctrine is inapplicable in the context of separate proceedings.[4]

---

3. *Available at* http://www.justice.gov/eoir/efoia/ocij/oppm01/OPPM01–02.pdf.

4. Our holding need not disturb the BIA's asserted "interests of judicial economy, jurisprudential integrity, and finality in immigration proceedings." Traditional res judicata principles have been applied in immigration proceedings. *See, e.g., Duvall v. Att'y Gen.*, 436 F.3d 382, 386–90 (3d Cir.2006); *Medina v. INS*, 993 F.2d 499, 503–04 (5th Cir.1993); *Ramon–Sepulveda v. INS*, 824 F.2d 749, 750 (9th Cir.1987); *Matter of Fedorenko*, 19 I. & N. Dec. 57, 61–67 (BIA 1984); *see also* Restatement (Second) of Judgments § 83. But although "[t]he doctrine of law of the case is similar to the issue preclusion prong of res judicata in that it limits relitigation of an issue once it has been decided," the doctrines are distinct. *Rezzonico v. H & R Block, Inc.*, 182 F.3d 144, 148 (2d Cir.1999). "[L]aw of the case is concerned with the extent to which law applied in a decision at one stage of litigation becomes the governing principle in later stages of the same litigation. Res judicata does not speak to direct attacks in the same case, but rather has application in subsequent actions." *Id.* But we will not apply res judicata rules in the first instance. *See Konan v. Att'y Gen.*, 432 F.3d 497, 501 (3d Cir.2005) ("[A] reviewing court is powerless to decide in the first instance issues that an agency does not reach."); *see also INS v. Ventura*, 537 U.S. 12, 18, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (per curiam). The BIA can consider those principles in the first instance, and remand to the Immigration Court to further develop the factual record as might be necessary. The BIA may also wish to consider in the first instance whether the statutory bar under 8 U.S.C. § 1158(a)(2)(C) applies to Daramy's second asylum application. We express no opinion on the merits of these issues or whether they have been preserved.

## B.

█ The BIA also affirmed the IJ's "additional finding that the respondent may not now seek asylum as he has failed to file his application within one year of his arrival in the United States."[5] Asylum cannot be granted "unless the alien demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). "The 1–year period shall be calculated from the date of the alien's last arrival in the United States or April 1, 1997, whichever is later." 8 C.F.R. § 1208.4(a)(2)(ii) (2009). The term "last arrival" is not defined by statute or its implementing regulations.

The IJ relied on *Joaquin–Porras v. Gonzales*, 435 F.3d 172 (2d Cir.2006), where the Court of Appeals for the Second Circuit held that "the term 'last arrival in the United States' should not be read to include an alien's return to the United States after a brief trip abroad pursuant to a parole explicitly permitted by United States immigration authorities." *Id.* at 179. Notably, the Court of Appeals for the Second Circuit did not have the benefit of the BIA's interpretation of this provision. *Id.* at 178 ("When, however, as is the case before us, the BIA summarily affirms a decision of an immigration judge, we do not extend [ ] deference to the IJ's statutory interpretations." (internal citations omitted)). Instead, the court noted that "in other contexts 'last arrival [in] the United States' has been taken to exclude returns from temporary departures from the country." *Id.* at 179. Further, the court concluded its interpretation "best accords with the purpose of the statute as a whole." *Id.* Specifically, the court observed that the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009, which added the 1–year deadline to the Immigration and Nationality Act ("INA"), aimed to address "the abuse of humanitarian provisions such as asylum." *Id.* at 180 (quoting S.Rep. No. 104–249, at 3 (1996)). Accordingly, the court concluded that "[p]ermitting applicants to reset the asylum clock by taking a short excursion abroad would undermine the one-year deadline's clear purpose of focusing the asylum process on those who have recently fled persecution in their home countries." *Id.*

Although the IJ in this case relied on the reasoning of *Joaquin–Porras,* and the BIA affirmed, a subsequent decision by the BIA in *In re F–P–R–,* 24 I. & N. Dec. 681 (BIA 2008), adopted an opposite viewpoint and rejected *Joaquin–Porras's* interpretation. The relevant facts of *In re F–P–R–* are similar to this case. The petitioner, a native and citizen of Mexico, initially arrived in the United States in 1983 without inspection. Later that year, he

---

5. We generally do not have jurisdiction to review the Attorney General's determinations regarding the one-year deadline provided in 8 U.S.C. § 1158(a)(2)(B). *See* 8 U.S.C. § 1158(a)(3) ("No court shall have jurisdiction to review any determination of the Attorney General under paragraph (2)."). However, we have jurisdiction to review any "constitutional claims or questions of law" raised in a petition for review, notwithstanding "any other provision of this chapter . . . which limits or eliminates judicial review." 8 U.S.C. § 1252(a)(2)(D). The proper interpretation of the 1–year deadline in 8 U.S.C. § 1158(a)(2)(B) is a question of law over which we have jurisdiction. *See Mudric v. Att'y Gen.,* 469 F.3d 94, 101 (3d Cir.2006); *see also Khunaverdiants v. Mukasey,* 548 F.3d 760, 765–66 (9th Cir.2008); *Joaquin–Porras v. Gonzales,* 435 F.3d 172, 178 (2d Cir.2006) ("As the government concedes, the proper interpretation of the one-year deadline provision of 8 U.S.C. § 1158(a)(2) is a question of law over which we have jurisdiction under the REAL ID Act.").

returned to Mexico where he stayed until returning to the United States without inspection in 1989. He remained in the United States without lawful status until he returned to Mexico on June 17, 2005, to attend a funeral. He then returned to the United States on July 20, 2005, when he was apprehended and placed in removal proceedings. The petitioner conceded removability and filed an application for asylum. *Id.* at 681–82. The IJ found the petitioner "ineligible for asylum as a result of his failure to file . . . within 1 year of his 'last arrival' in the United States," adopting the rationale of *Joaquin–Porras* to calculate the petitioner's "1–year period of eligibility to apply for asylum from his second arrival in the United States in 1989 instead of his most recent coming to this country on July 20, 2005." *Id.* at 682.

The BIA sustained the appeal, giving the term "last arrival" its ordinary meaning of the "alien's most recent coming or crossing into the United States after having traveled from somewhere outside of the country." *Id.* at 683. The BIA also held that under 8 C.F.R. § 1208.4(a)(2)(ii) (2008), "the identification and use of the date of the alien's last arrival in the United States for purposes of calculating the 1–year filing period is mandatory, not discretionary or conditional." *Id.* at 684. Therefore, it concluded that the IJ erred in calculating a 1–year filing period on the basis of the prior arrival date. *Id.*

In reaching its holding, the BIA explicitly rejected the reasoning of *Joaquin–Porras.* *See id.* ("We disagree with *Joaquin–Porras* in that we discern no basis for construing the regulation as not taking into account entries that occurred after brief absences from the United States."). The BIA observed that the IIRIRA's "legislative history provides no direct insight into the Attorney General's intent in promulgating the clear regulatory text through which he implemented his delegated authority to administer, interpret, and enforce the 1–year filing period." *Id.* at 685. The BIA recognized that "the literal construction of the term 'last arrival' may have the potential to permit certain aliens to defeat the purpose of the 1–year asylum filing deadline by making a brief trip abroad for the sole or principal purpose of evading the time bar and resuscitating the ability to seek asylum." *Id.* Because it was not disputed in that case that the petitioner's trip was for a legitimate purpose, the BIA did not "examine whether the regulation should be read to embody an implicit exception in a case where it is found that an alien's trip abroad was solely or principally *intended* to overcome the 1–year time bar." *Id.*

We must accord deference to the BIA's interpretation of the one-year deadline provision in 8 U.S.C. § 1158(a)(2)(B) and corresponding implementing regulation, 8 C.F.R. § 1208.4(a)(2)(ii). *See INS v. Aguirre–Aguirre,* 526 U.S. 415, 424–25, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999) (holding that "principles of *Chevron* deference are applicable" in the immigration context and emphasizing that "judicial deference to the Executive Branch is especially appropriate in the immigration context"); *see also Kamara v. Att'y Gen.,* 420 F.3d 202, 211 (3d Cir.2005) (stating we "will afford *Chevron* deference to the BIA's reasonable interpretations of statutes with which it is charged with administering" (internal citations omitted)). Because Congress did not define the term "the date of the alien's arrival" in 8 U.S.C. § 1158(a)(2)(B), "the agency's interpretation is given controlling weight unless it is arbitrary, capricious, or manifestly contrary to the statute." *United States v. Geiser,* 527 F.3d 288, 292 (3d Cir.2008) (internal quotations omitted). Further, "an agency's interpretation of its own regulation[ ] is 'controlling unless plainly erroneous or inconsistent with the regula-

tion.'" *Star Enter. v. EPA*, 235 F.3d 139, 147 (3d Cir.2000) (quoting *Auer v. Robbins*, 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997)).

*In re F–P–R–* is the BIA's controlling precedent interpreting 8 U.S.C. § 1158(a)(2)(B) as implemented by 8 C.F.R. § 1208.4(a)(2)(ii). The BIA's interpretation is not plainly erroneous or inconsistent with the statute or regulations; it employed a sound plain meaning canon of construction. *See Bonneville Int'l. Corp. v. Peters*, 347 F.3d 485, 491 (3d Cir.2003) ("We begin the process of statutory interpretation with the plain meaning of the statute—we must first consider the text." (internal citation omitted)); *cf. Mercy Catholic Med. Ctr. v. Thompson*, 380 F.3d 142, 152–53 (3d Cir.2004) ("[A]n agency's interpretation of its own regulations is not entitled to substantial deference by a reviewing court where an alternative reading is compelled by the regulation's plain meaning . . . ." (internal quotation marks omitted)).

Under *In re F–P–R–*, Daramy's asylum application might not be barred by the 1-year deadline. Like the petitioner in *In re F–P–R–*, Daramy applied for asylum shortly after arriving in the United States, albeit following prior presence in the country. The IJ's application of a one-year bar is inconsistent with the BIA's current interpretation and must be reexamined. On remand, the BIA can consider whether Daramy's application is barred under its current interpretation of 8 U.S.C. § 1158(a)(2)(B), as implemented by 8 C.F.R. § 1208.4(a)(2)(ii), and remand to the Immigration Court for further development of the factual record if required.

### III.

For the reasons set forth above, we will vacate the decision of the BIA and remand to the BIA for proceedings consistent with this opinion.