# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 9, 2008

No. 08-20036
Summary Calendar

Charles R. Fulbruge III
Clerk

NORIS G ROGERS

Plaintiff-Appellant

v.

KBR TECHNICAL SERVICES INC; THE UNITED STATES ARMY FIELD SUPPORT COMMAND

Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:06-CV-1389

Before KING, DAVIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Pro se Plaintiff-Appellant Noris Rogers appeals the district court's denial of his motion to vacate an arbitration award, denial of his post-judgment motion, and grant of Defendant-Appellee KBR Technical Services Inc.'s ("KBR") motion to confirm the arbitration award. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTS AND PROCEEDINGS

On August 25, 2005, Rogers entered into an employment agreement with Service Employees International, Inc. ("SEII") through KBR to work as an electrician in Afghanistan. SEII and KBR were affiliated companies that were both subsidiaries of Halliburton, Inc. Under the employment agreement, Rogers agreed to submit any claims to arbitration in accordance with the Halliburton Dispute Resolution Program ("HDRP"). Rogers worked at Camp Eggers, a U.S. military installation in Kabul, Afghanistan. On September 29, 2005, he complained to the U.S. Army inspector general's office that KBR was in default on several obligations, but his claims were found to be unsubstantiated. On November 12, 2005, Rogers demanded that KBR arrange a non-stop flight from Kabul to Houston so that he could demobilize, because, he claimed, KBR was in violation of his contract and the living conditions were unsuitable. On November 20, 2005, he left Camp Eggers without authorization or military escort to visit a travel agency and arrange for his trip home. Upon his return to the camp, he was detained by U.S. military personnel. He was ordered removed from the camp by the military commander, and his employment was terminated for violating company policy. Rogers was subsequently sent to Bagram Air Field before being flown back to the United States on a military flight.

On April 21, 2006, Rogers filed a complaint pro se against KBR and the U.S. Army Field Support Command alleging various claims arising out of his employment in Afghanistan. The district court granted a motion by KBR to compel Rogers to arbitrate his claims. On June 27, 2007, the arbitrator issued a decision. The arbitrator ruled against Rogers on all claims except for two "payment claims," one for an unpaid work area differential and another for reimbursement of postal expenses for the shipment of personal items. The arbitrator awarded Rogers $252.84 for these claims.

Rogers moved to vacate the decision. KBR moved to confirm it. On November 8, 2007, the district court granted KBR's motion and confirmed the award. Rogers then filed a post-judgment motion, titled a "motion for reconsideration," which was denied. He sought leave to file an amended motion for reconsideration, which was also denied.

Rogers timely appealed.

## II. STANDARDS OF REVIEW

A district court's confirmation of an arbitrator's award is reviewed de novo. Executone Info. Sys., Inc. v. Davis, 26 F.3d 1314, 1320 (5th Cir. 1994).

> Our review of the arbitrator's award itself, however, is very deferential. We must sustain an arbitration award even if we disagree with the arbitrator's interpretation of the underlying contract as long as the arbitrator's decision draws its essence from the contract. In other words, we must affirm the arbitrator's decision if it is rationally inferable from the letter or the purpose of the underlying agreement. In deciding whether the arbitrator exceeded its authority, we resolve all doubts in favor of arbitration.

Id. (internal quotations and citations omitted).

A district court's decision on a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e) is reviewed for abuse of discretion, "[h]owever, [t]o the extent that a ruling was a reconsideration of a question of law . . . the standard of review is de novo." Ross v. Marshall, 426 F.3d 745, 763 (5th Cir. 2005) (internal quotations omitted). "A district court abuses its discretion if it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Id. (internal quotations omitted).

## III. APPLICABLE LAW

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq., a district court may vacate an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). This Circuit has previously held that an arbitration award may be vacated on non-statutory grounds when an arbitrator manifestly disregards the law, which "is an extremely narrow, judicially-created rule with limited applicability," or if it is "contrary to public policy." Prestige Ford v. Ford Dealer Computer Servs., Inc., 324 F.3d 391, 395–96 (5th Cir. 2003).

The Supreme Court has recently held that the provisions of the FAA are the exclusive grounds for expedited vacatur and modification of an arbitration award, which calls into doubt the non-statutory grounds which have been recognized by this Circuit. See Hall Street Assocs., L.L.C. v. Mattel, Inc., 128 S. Ct. 1396, 1403 & n.5 (2008). However, because we affirm the district court and hold that the arbitration award is confirmed, there is no need in the instant case to determine whether those non-statutory grounds for vacatur of an arbitration award remain good law after Mattel.

## IV. DISCUSSION

A.  Motion to Vacate

On appeal, Rogers challenges the district court's denial of his motion to vacate on four grounds.

(1)  Contractually Provided Rules

In his motion to vacate, Rogers alleged that the "[a]rbitrator exceeded her [a]uthority and showed [m]anifest [d]isregard in ruling that the [American

Arbitration Association ("AAA")] Rules rather than the Halliburton Dispute Resolution Program (HDRP) rules would apply to this dispute." The HDRP adopts the AAA rules. Thus, nothing in the record shows that the arbitrator exceeded its powers or manifestly disregarded the law by applying the AAA rules to the arbitration.

However, from the wording of the remainder of Rogers's discussion of this issue in his motion to vacate, it appears that he specifically claimed that the arbitrator manifestly disregarded the law in ruling that the July 1, 2006 AAA rules, as opposed to earlier rules, applied to the proceedings. This interpretation is confirmed by Rogers's post-judgment motion, which clearly states Rogers's disagreement with the version of the AAA rules that was applied. As we liberally construe the arguments made by a pro se litigant, we address this issue under the standard of review for a motion to vacate an arbitration award, rather than the standard of review for a post-judgment motion. See Andrade v. Gonzales, 459 F.3d 538, 543 (5th Cir. 2006) (stating "[w]e must construe the pleadings of pro se litigants liberally").

Rogers relied on the HDRP's provision that no amendment of the rules, including AAA rules, could be applied to an already-initiated dispute. He claimed that, because he had first invoked the terms of the HDRP in a letter on October 18, 2005, the arbitrator was incorrect in determining that the arbitration was initiated on August 14, 2006 and applying the July 1, 2006 AAA rules. This claim fails because Rogers's October 18, 2005 letter did not initiate proceedings under the HDRP. The letter was a request for legal services pursuant to a legal consultation plan provided by Halliburton. Rogers also attempted to rely on the wording of the district court's decision to compel arbitration to establish that he had invoked the arbitration clause. Neither the October 18, 2005 letter, nor the district court's opinion compelling arbitration, indicate that the arbitrator erred in determining that the arbitration proceeding

was initiated after July 1, 2006. In fact, the August 14, 2006 demand for arbitration which led to the proceeding over which the arbitrator presided initiated the arbitration. We hold that the arbitrator's decision to apply the July 1, 2006 rules was rationally inferrable from the employment agreement and rules.

(2) Denial of Motion for a Judgment of Default

Rogers alleged that the arbitrator manifestly disregarded the law by failing to grant his motion for a judgment of default. He argued that Rule 3(E) of the HDRP required KBR to submit an answering statement by a certain date. KBR's failure to do so, Rogers claimed, entitled him to a default judgment. Although he correctly cited the HDRP rules, Rogers failed to cite any authority in the employment agreement, the HDRP, or any law which required a default judgment if a party failed to file an answering statement in a timely fashion. The AAA case manager indicated that a failure to file an answering statement would result in it not being considered by the AAA, but did not state that a default judgment was a sanction for failing to file an answering statement in a timely fashion. We conclude that the arbitrator's decision to deny Rogers's motion for a default judgment could be rationally inferred from the HDRP.

(3) Rules Regarding Travel to Afghanistan

Rogers claimed that the arbitrator manifestly disregarded the law in determining that KBR did not breach its contract with him by failing to obtain an Afghan visa for him. He relied on a U.S. State Department Consular Information Sheet entered into the record to show that KBR forced him to perform an illegal act by flying him into Afghanistan without a visa. Assuming arguendo that the State Department's summary of Afghanistan's requirements are a reflection of governing law, the sheet only indicates that "[a] passport and valid visa are required to enter and exit Afghanistan. . . . Americans arriving in the country by military air usually have considerable difficulties if they choose

6

to depart Afghanistan on commercial air, because their passports do not receive stamps showing they entered the country legally." In his motion to vacate, Rogers selectively quoted the State Department information, failing to note that the those arriving by military air were encouraged to legalize their status upon arrival, "if there is any chance they will end up departing on anything other than military air." Because KBR arranged military transportation for Rogers to and from Afghanistan, according to the information sheet, there was no need for Rogers to obtain a visa for Afghanistan.

Nothing in the information sheet, or elsewhere in the record, indicates that Rogers was performing an illegal act when he entered Afghanistan on a U.S. military-chartered aircraft to work on a U.S. military base in a war zone without first obtaining a visa, or that his failure to obtain a visa after his arrival was an illegal act. Rogers has not shown that the arbitrator manifestly disregarded the law in concluding that Rogers had the proper documents to work at Camp Eggers in Afghanistan.[1] The arbitrator's decision was rationally inferrable from the employment agreement and rules.

(4)     Failure to Provide Written Reasons

Rogers argued that the arbitrator failed to issue rulings on his personal injury and false advertising claims. He claimed that this violated the HDRP rules and the AAA code of ethics for arbitrators.[2]

---

[1] In his post-judgment motion, Rogers raised the issue of KBR failing to register him with the U.S. Embassy in Afghanistan. This was not alleged in his motion to vacate. Thus, it will only be reviewed under the standard for a post-judgment motion. See infra.

[2] In Rogers's motion to vacate, he alleged that the arbitrator manifestly disregarded the law pertaining to his personal injury and false advertising claims by not providing written reasons for its award. In his post-judgment motion, this alleged error in failing to provide written reasons was characterized as misconduct on the part of the arbitrator, as opposed to a manifest disregard of the law. In his briefs on appeal, Rogers only claims that the arbitrator's failure to provide written reasons was misconduct, as he alleged in his post-judgment motion, not a manifest disregard of the law as he argued in his motion to vacate. Thus, KBR reasonably argues that this Court should review the arbitrator's failure to provide written reasons under the standard for a post-judgment motion. However, as a pro se litigant,

The HDRP rules require that "[t]he arbitrator shall write a statement of reasons for the award if requested to do so in the request to initiate proceedings or in the answering statement." In his motion to vacate, Rogers failed to cite any request for a written statement of reasons in the request to initiate proceedings or in an answering statement.

The AAA code of ethics only notes that "[t]he arbitrator should, after careful deliberation, decide all issues submitted for determination." The plain language of this ethical rule does not require a written statement regarding each claim. Clearly, the arbitrator decided Rogers's tort and false advertising claims by not awarding him anything for those claims.

It does not appear that the arbitrator manifestly disregarded those rules. Even if the arbitrator had, there is nothing to show that a failure to provide written reasons resulted in a "significant injustice", which is required to grant relief. Am. Laser Vision, P.A. v. Laser Vision Inst., L.L.C., 487 F.3d 255, 259 (5th Cir. 2007). Furthermore, the arbitrator's decision was rationally inferrable from the employment agreement and rules.

B.    Post-Judgment Motion

The Federal Rules of Civil Procedure do not recognize a "motion for reconsideration" in those words. Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 173 (5th Cir. 1990), abrogated on other grounds by Little v. Liquid Air Corp., 37 F.3d 1069, 1076 n.14 (5th Cir. 1994).

> [A] motion [for reconsideration], provided that it challenges the prior judgment on the merits, will be treated as either a motion "to alter or amend" under Rule 59(e) or a motion for "relief from judgment" under Rule 60(b). Under which Rule the motion falls turns on the time at which the motion is served. If the motion is served within ten days of the rendition of judgment, the motion falls

---

we construe his briefs liberally and address the issue raised in the motion to vacate. See Andrade, 459 F.3d at 543.

under Rule 59(e); if it is served after that time, it falls under Rule 60(b).

Lavespere, 910 F.2d at 173 (footnotes omitted). Rogers's motion for reconsideration was filed within ten days of the rendition of judgment. Thus, it falls under Rule 59(e).

Motions under Rule 59(e) are not subject to the same stringent limitations as those under Rule 60(b). Id. at 173–74.

> [I]n order to reopen a case under Rule 59(e) on the basis of evidentiary materials that were not timely submitted, the mover need not first show that her default was the result of mistake, inadvertence, surprise, or excusable neglect or that the evidence is such as to show that the judgment was manifestly wrong.

Id. at 174. However, "a motion to alter or amend the judgment under Rule 59(e) must clearly establish either a manifest error of law or fact or must present newly discovered evidence and cannot be used to raise arguments which could, and should, have been made before the judgment issued." Rosenzweig v. Azurix Corp., 332 F.3d 854, 863 (5th Cir. 2003) (internal quotations omitted).

### (1) Applying the July 1, 2006 Rules

This issue in Rogers's post-judgment motion was simply a more explicitly worded restatement of the same argument made in Rogers's motion to vacate, which is addressed above. There is no need to address it again. Rogers did not submit any newly discovered evidence in his post-judgment motion, and the district court did not abuse its discretion in denying Rogers's post-judgment motion on this issue.

### (2) Manifest Disregard of Federal Rule of Civil Procedure 55

In his post-judgment motion, Rogers for the first time argued that KBR's failure to submit a timely answer to his demand for arbitration was a violation of Rule 55. He claimed that the arbitrator manifestly disregarded the law by not granting his motion for a default judgment. He could and should have made this

argument in his motion to vacate. Thus, it could not be made in a Rule 59(e) motion. Rosenzweig, 332 F.3d at 863.

Even if he had made this argument in his motion to vacate, Rule 1 states "[t]hese rules govern the procedure in all civil actions and proceedings in the United States district courts." Rule 55 does not apply to arbitration proceedings. HDRP rules require the application of the "state or federal substantive law which would be applied by a United States District Court" to arbitration proceedings. However, that rule refers to substantive law, not procedural law or rules. The arbitrator's decision not to apply Rule 55 to the arbitration proceedings was rationally inferrable from the employment agreement and rules. The district court did not abuse its discretion in denying Rogers's post-judgment motion on this issue.

(3)    Rules Regarding Travel to Afghanistan

Rogers reiterated his argument from his motion to vacate that KBR should have obtained an Afghan visa for him. There is no need to address that issue again. However, in his post-judgment motion, Rogers added a claim that KBR failed to register him with the U.S. Embassy or Consulate when he entered Afghanistan, citing that as a requirement under KBR's contract with the U.S. Army. Rogers could and should have made this argument in his motion to vacate. It could not be made in a Rule 59(e) motion. See Rosenzweig, 332 F.3d at 863. Even if properly made, Rogers presented no evidence to show that he was not registered with the appropriate U.S. Embassy or Consulate when he was working at Camp Eggers. The district court did not abuse its discretion in denying Rogers's post-judgment motion on this issue.

(4)    Failure to Provide Written Reasons

In his motion to vacate, Rogers claimed the arbitrator manifestly disregarded the law when it did not provide written reasons its decision regarding each of his claims. In his post-judgment motion, he re-characterized

this claim as misconduct on the part of the arbitrator and cited items in the record which he claimed were requests for written reasons. This is an argument that Rogers could and should have made in his motion to vacate. Id. The evidence he cited to show that he made a request for written reasons was not newly discovered. Further, he cited a January 31, 2007 conference call which was neither a request to initiate proceedings nor an answering statement. Thus, it was insufficient under the HDRP rules to require the arbitrator to provide a written statement of reasons. Even if Rogers had raised this argument and cited this evidence in his motion to vacate, he failed to show that the arbitrator was guilty of misconduct that resulted in prejudice to him. He also failed to show that the arbitrator's decision was not rationally inferrable from the agreement and rules. The district court did not abuse its discretion in denying Rogers's post-judgment motion on this issue.

## V. CONCLUSION

The district court's denial of Rogers's motion to vacate the arbitration award, denial of his post-judgment motion, and grant of KBR's motion to confirm the arbitration award are AFFIRMED.